657 F.2d 621
 L. Lee HUMMER, Appellant,
v.
John DALTON, Governor, Commonwealth of Virginia; Selwyn
Smith, Secretary of Public Safety Commonwealth of Virginia;
Terrell Don Hutto, Director Department of Corrections;
Pleasant C. Shields, Chairman, Virginia Parole Board; R. A.
Young, Regional Administrator, Western Region # 1; G. G.
Jefferson, Superintendent Floyd Correctional Unit # 5, Appellees.
 No. 79-6617.
 United States Court of Appeals,
Fourth Circuit.
 Argued April 6, 1981.
Decided Aug. 26, 1981.
 
 Paul W. Nolan, Washington, D. C. (Sara-Ann Determan, Hogan & Hartson, Washington, D. C., on brief), for appellant.
 Burnett Miller, III, Asst. Atty. Gen. (Marshall Coleman, Atty. Gen. of Va., Richmond, Va., on brief), for appellees.
 Before WINTER, Chief Judge, RUSSELL, Circuit Judge, and GEORGE ROSS ANDERSON, Jr., United States District Judge for the District of South Carolina, sitting by designation.
 DONALD RUSSELL, Circuit Judge:
 
 
 1
 This is a Section 1983[1] action by the plaintiff/appellant, a Virginia State prisoner, to recover damages for alleged unconstitutional deprivations arising out of the conditions of his imprisonment. His action was originally cast as a class action on behalf of all persons confined in all of the Virginia prisons. Upon the dismissal of the class aspects of this suit,[2] the plaintiff directed his assertions of unconstitutional deprivations to the conditions of his confinement at the Floyd Medical Correctional Center (Floyd), where he was confined at the time he filed his action, and at the Haynesville Correctional Center (Haynesville), where he had been earlier confined for a short period of time between April 7, 1978, and July 11, 1978.
 
 
 2
 In his statement of claims, as supplemented by four amended complaints filed over a period of almost a month, the plaintiff alleged various deprivations arising out of denial of exercise time, overcrowding of prison dormitories, excessive noise during the day time in the dormitories, and finally improper limitation of his outgoing legal mail, at public expense, to ten pieces per week and of refusal to place postage on 18 pieces of mail addressed to the press.
 
 
 3
 The defendants filed a motion to dismiss the claims relating to the Floyd Unit, accompanying the motion with various supporting affidavits. On the basis of this showing, the district court granted by order dated June 19, 1979, conditional summary judgment, with the provision that such judgment should become final if the plaintiff failed to file counter-affidavits within 15 days. The plaintiff promptly filed his traverse to defendants' motion and supported it with his affidavit, as allowed by the district court's order. By order dated July 2, 1979, the district court found that the traverse and its supporting affidavit were "conclusory and fail(ed) to set forth any matters justifying modification of this Court's previous order."
 
 
 4
 In its order of June 19, the district court had observed that the affidavits submitted by the defendants in support of summary judgment were "directed solely toward the conditions at Floyd," and held "(f)or that reason defendants (were) precluded from obtaining summary judgment on six of the seven claims insofar as they relate to the Haynesville institution." After being advised of the omissions, the defendants filed another motion to dismiss, addressed specifically to the conditions of the plaintiff's confinement at the Haynesville Unit. This motion was supported by an affidavit. The district court, after reviewing painstakingly the charges in question relating to the Haynesville Unit and the defendants' showing in answer, granted by order dated September 4, 1979, a second conditional summary judgment in favor of the defendants, adding, as in the earlier order, that such conditional "(s)ummary judgment becomes final in fifteen (15) days unless plaintiff files an affidavit specifically addressing the matters raised in defendants' affidavit." It further ordered that the conditional "summary judgment on claims (1) through (7) become final as they related to conditions at Floyd."
 
 
 5
 Unlike his action after notice of the granting of a conditional summary judgment involving the Floyd Unit, the plaintiff made no effort to file any rebutting affidavit or traverse in connection with his Haynesville claims but filed on September 24, 1979 instead his notice of appeal from the granting of summary judgments both with reference to the Floyd and the Haynesville Units.
 
 
 6
 After the plaintiff filed his notice of appeal, counsel was appointed to represent him on appeal. Counsel has raised a number of objections to the several orders of the district court. Plaintiff contends, first, that the district court, in its grant of judgment, did not comply with Rule 58, Fed.R.Civ.P. This rule provides, inter alia, that "(e)very judgment shall be set forth on a separate document" and "is effective only when so set forth ...." This is a purely technical objection, which, considering the purpose of the Rule, and the decisions applying it, is not a ground for reversal of the judgments in this particular case. The sole purpose of this part of the Rule is the protection of an appellant from dismissal of his appeal for untimeliness. When the application of the Rule does not serve this purpose, it is unnecessary to abort an appeal because of noncompliance with the Rule. Thus, in Bankers Trust Co. v. Mallis, 435 U.S. 381, 385, 98 S.Ct. 1117, 1120, 55 L.Ed.2d 357 (1978), the Court said:
 
 
 7
 "... certainty as to timeliness, however, is not advanced by holding that appellate jurisdiction does not exist absent a separate judgment. If, by error, a separate judgment is not filed before a party appeals, nothing but delay would flow from requiring the court of appeals to dismiss the appeal. Upon dismissal, the district court would simply file and enter the separate judgment, from which a timely appeal would then be taken. Wheels would spin for no practical purpose."
 
 
 8
 We followed Mallis on this point in Caperton v. Beatrice Pocahontas Coal Co., 585 F.2d 683 (4th Cir. 1978). After quoting from Mallis and relying on Professor Moore, we said:
 
 
 9
 "... that the separate judgment rule 'should be interpreted to prevent loss of the right of appeal, not to facilitate loss,' 9 Moore's Federal Practice P 110.08(2), at 119-120, the Court held that the parties 'should be deemed to have waived the separate judgment requirement' and that 'the Court of Appeals properly assumed appellate jurisdiction' to review a final judgment where (1) 'the District Court clearly evidenced its intent that the opinion and order from which an appeal was taken would represent the final decision in the case'; (2) a judgment of dismissal 'was recorded in the clerk's docket'; and (3) the appellees 'did not object to the taking of the appeal in absence of a separate judgment.' 435 U.S. at 387-388, 98 S.Ct. at 1121." pp. 690-91.[3]
 
 
 10
 The decisions of the district court in this case were plainly intended to be "final decisions in the case," were duly recorded on the "Clerk's docket," and were understood and accepted by the plaintiff as final for purposes of appeal. The plaintiff filed a timely appeal and the reason for application of Rule 58 is not present here.
 
 
 11
 We would not be understood, however, as commending or encouraging the practice of failing to comply with the requirement of Rule 58 and would repeat the admonition of the Second Circuit in Turner v. Air Transport Lodge 1894, Etc., 585 F.2d 1180, 1182 (2d Cir. 1978), that "the better procedure is to set forth the decision in a separate document called a judgment (Fed.R.Civ.P. 58)." See also Beukema's Petroleum Co. v. Admiral Petroleum Co., 613 F.2d 626, 628 (6th Cir. 1979).
 
 
 12
 For his second objection to the order of the district court, the plaintiff charges that the conditional summary judgment procedure followed by the district court is contrary to our decision in Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and does not provide for "fair, adequate and meaningful consideration" of his claims. What we were concerned with in Roseboro was the reasonable possibility that a pro se litigant in the circumstances of that case might not understand that he was entitled to file counter-affidavits and that he might not be alerted to the fact that "his failure to so respond might result in the entry of summary judgment against him." Neither of those possibilities, however, is present in this case. The plaintiff was alert to his right to file counter-affidavits in order to prevent the entry of a final summary judgment against him. He recognized his right to rebut the showing of the defendants and he exercised it by filing counter-affidavits in the Floyd Unit claim; though fully noticed, he chose to waive that right in the later Haynesville Unit motion. The waiver in the latter case was a knowing one. There was no failure to advise the plaintiff of his rights in connection with either his Floyd or Haynesville claims except in one particular, which, under the unique circumstances of this case, is insufficient to require reversal. The shortcoming in the procedure adopted by the district court here is that it may not have adequately notified a party suing pro se of the time within which he must appeal, if he so chose. But that shortcoming is unimportant in this case since the plaintiff has appealed within time and has suffered no prejudice by reason of any confusion on the time within which to appeal as stated in the order of the district court.
 
 
 13
 While a want of prejudice in this case requires no detailed inquiry on the propriety of the conditional summary judgment procedure in pro se prisoner litigation (a procedure for which, as the plaintiff's counsel concedes, there is precedent, certainly in other contexts), we would suggest that a better procedure for handling motions for summary judgment by the defendants in such cases as this would involve, first, the issuance of a notice to the plaintiff that he could file counter-affidavits within fifteen (15) days from the date of the notice and warning him that a failure so to do may result in summary judgment. If no counter-affidavits are filed within the required time by the plaintiff, or if he files counter-affidavits, the district court should under this procedure review the showing made by the defendants in support of the motion and any counter-affidavits filed by the plaintiff and determine from such showings whether there are any genuine issues of fact and decide the proceeding on the record, giving the parties specific notice of the time when either, if dissatisfied, may appeal. This procedure would avoid any possibility of misunderstanding by a pro se litigant and we commend it as the preferred procedure.
 
 
 14
 The plaintiff next would fault the district court's grant of summary judgment despite the fact that, in his view, the plaintiff's counter-affidavits in connection with his claims against the Floyd Unit presented genuine issues of fact resolvable only after an evidentiary hearing. A careful review of plaintiff's traverse and counter-affidavits, though, demonstrates that there was no real dispute between the parties on the actual relevant facts. The traverse and affidavits consist primarily of pejorative adjectives and arguments. They presented no real dispute over any relevant facts. Thus, he quotes statements from prison officials that the prisons of the State are overcrowded by reason of double-celling,[4] and that their requests for more lenient parole grounds in order to relieve overcrowding have been disregarded by the Legislature of the State. This latter statement is purely argumentative and presents no relevant issue of fact. Moreover, he does not deny that each of the two dormitories at Floyd provides 4000 square feet for less than sixty inmates, and that at Haynesville each of the two dormitories provides 4000 square feet for 43 inmates, in one dormitory and 43 inmates in the other dormitory, or that, in addition to the toilet facilities in each dormitory at both facilities there are also adequate toilet and shower facilities in the basement of each of the dormitories. He does not contradict the statement in the defendants' affidavits that the various inmates have conflicting requests on ventilation and that they do their best to accommodate all groups. He admits that he has been provided with special accommodations free from smoke but he declares he is not seeking relief so much for himself in this regard as for the other inmates. His suit is, however, confined to redress for violation of his own personal rights and not one by him as a knight-errant for all prisoners. All in all, the traverse and affidavits did not refute the showing of the defendants and, in its order of September 4, 1979, the district court so ruled. The plaintiff was duly advised of this ruling in that order, which notified him that he had 30 days to appeal from the dismissal of his claims relating to the Floyd Unit, and 30 days from the date on which conditional summary judgment on his Haynesville claims became final.
 
 
 15
 With particular reference to the Haynesville Unit, which was covered by the second motion of the defendants for summary judgment, it is argued that the district court failed to afford the plaintiff an opportunity to reply to the affidavit filed by the defendants. The reason the plaintiff did not reply, however, was not that the district court denied the plaintiff the right to make a reply but that the plaintiff, without seeking to reply within the time allowed by the district court, proceeded to appeal. Such action on his part constituted a waiver of any right to reply. And the reason for such conduct was obvious. There was nothing that the plaintiff could add beyond what he had already set forth in his traverse and affidavit filed in connection with his treatment at the Floyd Unit. The claims against Haynesville were no different in principle from those made against Floyd. This the plaintiff unquestionably recognized. He is not an unsophisticated prisoner. His failure to file any counter-affidavits in connection with the Haynesville claims was not inadvertent but studied. It is proper to treat it as a conscious waiver.
 
 
 16
 The final contention is that the district court overlooked his claims with reference to limitations on legal mail, and refusal to place postage on 18 pieces of legal mail to the media. It does appear that the district court did not specifically address these two claims which were set forth for the first time in plaintiff's fourth amended complaint. Whether this failure was the result of inadvertence or purposeful is immaterial, the claims are, as we have already said, without merit, and do not require reversal.
 
 
 17
 While we affirm the grant of summary judgment in this case because we feel that, under the unique circumstances of this case, the plaintiff has not suffered any constitutional deprivation nor has he been prejudiced by the failure of the district court to comply with the requirements of Rule 58, we would suggest again that district courts in other like cases should follow the procedure of affording the plaintiff an opportunity to file counter-affidavits, with notification that a failure so to do, may result in the entry of summary judgment, before making any ruling on a motion for summary judgment.
 
 
 18
 Accordingly, the judgment of the district court is
 
 
 19
 AFFIRMED.
 
 
 20
 WINTER, Chief Judge, concurring and dissenting:
 
 
 21
 I concur in the majority's decision on the procedural aspects of this case. The conditional summary judgment procedure devised by the district court ordinarily does not meet the requirements of Roseboro v. Garrison, 528 F.2d 309 (4 Cir. 1975), a decision to which we have consistently adhered, see e. g., Davis v. Zahradnick, 600 F.2d 458 (4 Cir. 1979), because it fails adequately to advise a pro se litigant of the steps he must take in order to avoid summary judgment. Moreover, because a conditional summary judgment is couched in terms suggesting that judgment has been entered or that claims have been dismissed, albeit conditionally, the ordinary pro se litigant may well conclude that his case is over and that there is nothing more that he can do, other than to appeal, to seek redress for the rights that he claims have been denied him. When this happens it results in unnecessary appellate review of matters which should have been fully litigated in the district court in the first instance.
 
 
 22
 At the same time, I agree that this pro se litigant was not prejudiced by the conditional summary procedure and the failure to give him the Roseboro notice. With respect to his claims regarding the Floyd unit, despite the lack of adequate notice, Hummer managed to respond to the order of conditional summary judgment with affidavits fulfilling the requirements of Rule 56, F.R.Civ.P. He did not respond with respect to his claims regarding the Haynesville unit; but since he demonstrated that he knew what he must do with respect to the Floyd unit, I agree that his failure to respond with respect to the Haynesville unit should be treated as a waiver of his right to respond.
 
 
 23
 Where I differ with the majority is with respect to the merits of summary judgment for defendants on certain of Hummer's claims with respect to the Floyd and Haynesville units. My views with respect to them and his other claims follow:
 
 
 24
 A. Floyd Unit Claims.
 
 
 25
 In granting summary judgment as to claims 1 through 7 regarding the Floyd unit, the district court relied only upon the version of the facts established in defendants' affidavits. Even if it ignored the affidavit submitted along with Hummer's "traverse," however, the district court should have denied summary judgment on most claims. Hummer's verified complaint and affidavits submitted along with it establish clear factual disputes on most claims. A properly verified complaint, insofar as it relates facts within the personal knowledge of the plaintiff, suffices as an affidavit under Rule 56(e). Davis v. Zahradnick, supra. It is axiomatic that summary judgment should not be granted if there is a genuine issue as to any material fact. Rule 56(c), F.R.Civ.P.
 
 
 26
 Hummer's claim 1 alleges inadequate ventilation in living facilities. The district court granted summary judgment on the ground that the affidavit of G. G. Jefferson, Superintendent at Floyd, stated that adequate ventilation is supplied by windows and will be improved by an exhaust system to be installed in the future. Hummer's verified complaint and the affidavits of several other inmates, however, state that windows are wired shut for most of the winter and that no other ventilation system exists. The fact that other prisoners may have preferred no air at all to freezing air does not detract from Hummer's claim. The complaint and affidavits state that smoke, roach spray, and bathroom odors fill the dormitory, resulting in the spread of disease. Clearly a genuine issue of fact exists as to whether the ventilation of living quarters meets minimal constitutional standards. The fact that future steps may alleviate the problem cannot support summary judgment at this time.
 
 
 27
 The second claim alleges inadequate living space and bathroom facilities. Jefferson's affidavit, upon which the district court based its award of summary judgment, states that fifty-one inmates occupy buildings which may hold up to sixty without serious crowding. Jefferson states that each dormitory has a bathroom with one sink and toilet to serve about twenty-five inmates and that there is a larger bathroom area in the basement. By contrast, Hummer's complaint and several affidavits state that thirty inmates are placed in dormitories meant to hold only eighteen. In an affidavit attached to his "traverse," Hummer even contradicts Jefferson's statements regarding the physical measurements of the dormitories. Hummer's affidavit also states that the basement bathroom facilities are not available from 8:00 p. m. to 7:15 a. m., leaving only one toilet for thirty men. Claim 2 thus presents a variety of disputed material facts.
 
 
 28
 Claim 3 asserts a right to be segregated from prisoners who smoke. Jefferson's affidavit states, and Hummer essentially admits, that Hummer has been permitted to sleep in a jail cell to escape smoke-filled dormitories. The district court granted summary judgment because of this accommodation of Hummer's demands and because the court doubted that the allegation stated a violation of constitutional magnitude. I think the proper course would be to treat Claim 3 as simply one aspect of Hummer's charges of inadequate ventilation. The providing of a non-smoking area may be an appropriate remedy to some of Hummer's other complaints. Rather than granting summary judgment, the district court should have considered Claim 3 in conjunction with Hummer's overall assertions that the condition of the air at the Floyd facility endangers the health of inmates.
 
 
 29
 Claim 4 alleges only that Hummer's health has deteriorated as a result of overcrowding and poor ventilation. The court granted summary judgment on this claim for the same reasons it dismissed the first claim and because the affidavit of a Floyd nurse stated that Hummer had no special sensitivity to smoke. In his "traverse," which he "incorporates" into an attached affidavit, Hummer details the medical problems he suffered as a result of inadequate ventilation. Because of this factual dispute, and because of disputes regarding the adequacy of ventilation, I think that summary judgment as to Claim 4 was inappropriate.
 
 
 30
 Claim 6 alleged that Hummer was denied adequate access to the out-of-doors for sunshine and exercise. The district court granted summary judgment, referring to Jefferson's affidavit which claimed that adequate recreation time was available in suitable weather. In his verified complaint, however, Hummer stated that he was denied the right to go outside for 100 days in the winter of 1978-79. Moreover, in an affidavit attached to his "traverse," Hummer stated that inmates are sometimes denied access to the outside even during good weather. Issues of fact clearly exist which ought to preclude summary judgment on Claim 6.
 
 
 31
 Finally, Claim 7 alleges that inmates are exposed to excessive noise from a workshop area adjoining the room where inmates must spend most of their daylight hours. On the basis of Jefferson's affidavit, the district court concluded that noise was an "unavoidable consequence" of workshop activities and did not "impose upon plaintiff's constitutional rights." The fact that noise may be unavoidable, as long as the workshop continues to be used as it presently is, does not preclude a claim that the present condition violates Hummer's rights. The very essence of Hummer's claim is that excessive noise is unavoidable and the workshop should be moved or otherwise insulated from living areas. Summary judgment is not appropriate for determining that the noise level is not excessive since, in essence, Jefferson's affidavit says noise is not excessive while Hummer's and those of other inmates say it is.
 
 
 32
 I agree, however, that summary judgment for defendants was correctly entered on Hummer's fifth claim that Floyd lacked an adequate medical facility. Although Hummer disputes the availability of properly trained medical personnel, he does not claim that he personally was deprived of adequate medical care. Since Hummer may not maintain a class action, the absence of this showing is fatal to his claim.
 
 
 33
 B. Haynesville Unit Claims.
 
 
 34
 Even though Hummer filed no additional affidavits in response to the conditional summary judgment entered with respect to his claims at the Haynesville unit, I think that, on the existing record, summary judgment for defendants was inappropriate as to some of those claims.
 
 
 35
 The district court dismissed Hummer's first claim, that of inadequate ventilation, because the affidavit of Samuel Farrish, Assistant Superintendent at Haynesville, claimed ventilation was adequate. This statement, however, is flatly contradicted by Hummer's affidavit submitted along with his original complaint stating that the lack of an exhaust system at Haynesville caused him to inhale smoke, roach spray and bathroom odors. To me, an evidentiary hearing to resolve the conflict is required.
 
 
 36
 Hummer also claimed that the Haynesville dormitories were overcrowded. The Farrish affidavit states essentially that Haynesville dormitories are not overcrowded. But Hummer's affidavit recites that sixty inmates are lodged in a building designed for twenty-two, that only one and one-half feet separate double bunks, that violence has resulted from overcrowding, and that the overcrowding creates a fire hazard when the inmates are locked into the dormitory. Again, it seems to me that there are genuine disputes as to material facts regarding possible unconstitutional overcrowding and summary judgment was inappropriate.
 
 
 37
 Hummer also alleges the absence of a no-smoking area, and he asserts that he sustained personal injuries as a result of lack of ventilation and overcrowding. These are, of course, not separate claims but aspects of his first two claims and should be treated as part of them.
 
 
 38
 I agree, however, that Hummer did not sufficiently support his claims of inadequate access to sunlight and excessive noise at the Haynesville unit to defeat defendants' affidavits to the contrary. In short, no genuine dispute as to a material fact has been demonstrated with respect to those claims.
 
 
 39
 C. Hummer's Other Claims.
 
 
 40
 In a third amended complaint Hummer alleged that defendants restricted his access to the courts by limiting his outgoing weekly mail to attorneys, state and federal officials, agencies, state and federal courts and Virginia correctional personnel. He alleged also that defendants refused to place postage on eighteen pieces of mail directed to the press to give publicity to his claims of cruel and unusual punishment.
 
 
 41
 Although it does not appear that the district court considered and decided these claims, I would agree that Hummer did not allege meritorious causes of action. A limitation of ten items per week on "legal" mail is not so restrictive that it will support a legally cognizable claim of denial of access to the courts. The failure to provide free postage for communications to the news media is not an unreasonable denial of the mailing privilege.
 
 
 42
 In summary therefore, I would vacate the summary judgments for defendants in part and require an evidentiary hearing with respect to certain of Hummer's claims of denial of his constitutional rights at the Floyd and Haynesville units. From a contrary conclusion, I respectfully dissent.
 
 
 
 [1]
 42 U.S.C. § 1983
 
 
 [2]
 Oxendine v. Williams, 509 F.2d 1405 (4th Cir. 1975), clearly sustains the denial by the district court of class status
 
 
 [3]
 In re W. F. Hurley, Inc., 612 F.2d 392, 394 (8th Cir. 1980); Atchison, T. & S. Ry. Co. v. Union Tank Car Co., 611 F.2d 1184, 1187-88, n. 10 (7th Cir. 1979); Al-Kim, Inc. v. United States, 610 F.2d 576, 578, n. 7 (9th Cir. 1980); De Luz Ranchos Inv. v. Coldwell Banker & Co., 608 F.2d 1297, 1299, n. 1 (9th Cir. 1979); U. S. General, Inc. v. City of Joliet, 598 F.2d 1050, 1051, n. 1 (7th Cir. 1979)
 
 
 [4]
 Such a claim was dismissed in Bell v. Wolfish, 441 U.S. 520, 542, 99 S.Ct. 1861, 1876, 60 L.Ed.2d 447 (1979), the Court remarking that there was no "one man, one cell" principle lurking in the Due Process Clause. See Comment, Constitution Law Pretrial Detention Due Process Bell v. Wolfish, 26 N.Y.U.L.Rev. 341, 355 n. 121