Carl DOUGHTY, and Larry
Wilson, Plaintiffs,

v.

The BOARD OF COUNTY COMMIS-
SIONERS FOR the COUNTY OF
WELD, STATE OF COLORADO, and
Ed Jordan, Defendants.

No. 88–F–1160.

United States District Court,
D. Colorado.

June 15, 1989.

Joseph P. Genchi, Estes Park, Colo., for plaintiffs.

Thomas O. David, Weld County Atty., and Bruce T. Barker, Asst. Weld County Atty., Greeley, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

SHERMAN G. FINESILVER, Chief Judge.

This suit involves entitlement of inmates incarcerated at a county jail to have cigarette smoking privileges in spite of a county-wide ban on smoking in public buildings. There is little precedent on the exact point involved in this litigation.

Plaintiffs are inmates in the Weld County Jail who are awaiting trial on state felony charges. Defendants are the county's Board of County Commissioners and the County Sheriff. The jail is located in Greeley, Colorado, forty-eight miles north of Denver. Plaintiffs bring this action under 42 U.S.C. Section 1983 and seek to enjoin the policy of Weld County banning cigarette smoking in all of the county's public vehicles and buildings, including the jail. Plaintiffs' motion for preliminary injunction was denied by the court on September 14, 1988, and a petition for writ of mandamus was filed by plaintiffs with the Tenth Circuit Court of Appeals on September 28, 1988. Trial on the merits to the court commenced on May 31, 1989, and concluded on June 6, 1989. For the reasons stated below, judgment is entered in favor of defendants and against plaintiffs.

Plaintiffs seek injunctive relief pursuant to 42 U.S.C. Section 1983. That statute provides a remedy for violations of citizens' constitutional or statutory rights. Here, plaintiffs contend that the county's no-smoking policy violates inmates' fourteenth amendment right to due process, and the eighth amendment's prohibition against cruel and unusual punishment, and therefore seek to prohibit enforcement of the no-smoking policy among inmates at the Weld County Jail. We find that the plaintiffs have failed to establish a basis for relief. This memorandum opinion and order constitutes the court's findings of fact and conclusions of law.

424

## I.

The practice of cigarette smoking has been part of the American culture and trade since the formation of the Republic. European settlers learned of the process of cultivating and smoking tobacco from Native Americans, and tobacco has been an important export from the United States since the year 1613. Nowhere is the practice of smoking a more imbedded institution than in the nation's prisons and jails, where the proportion of smokers to non-smokers is many times higher than that of society in general. From the 1920's, however, scientific discoveries as to the deleterious effects of smoking on the health of the smoker and those in proximity to him have slowly turned public opinion against smoking. The 1989 report of the United States Surgeon General calls for the attainment of a smoke-free society as an essential and life-saving long term goal.[1]

Smoking accounts for over one sixth of the deaths in the United States, and is the single most important preventable cause of death.[2] Smoking is responsible for increases in lung cancer, cancer of the larynx, chronic bronchitis, coronary artery disease, and peptic ulcer.[3] Environmental tobacco smoke also presents a serious risk to the health of non-smokers. It is clear that passive smoke exposure to non-smokers presents a wide range of health problems. The National Research Council estimates that in a given year, from 2490 to 5160 non-smokers may have died of lung cancer because of environmental tobacco smoke.[4] Evidence presented in this case indicates restrictions on public smoking can reduce the threat to non-smokers. It is quite clear that exposure to tobacco smoke among non-smokers is ubiquitous.

## II.

In 1988, defendant Weld County Board of County Commissioners considered a resolution which would prohibit smoking in any public building or vehicle. Defendant Ed Jordan, Weld County Sheriff, testified that the Board contacted him for his recommendation whether the county jail should be exempted from this policy. Sheriff Jordan testified that, after consulting with his jail staff, he recommended to the board that the jail be included in the no-smoking policy. The resolution was passed by the Board of County Commissioners on May 9, 1988, and did not exempt the jail. The no-smoking policy took effect in the jail on July 1, 1988. No other city or county jail in Colorado has completely prohibited smoking within the institution.

At trial, several inmates or former inmates testified that not being able to smoke cigarettes makes them irritable and short tempered. Plaintiff Larry Wilson testified that not being able to smoke contributes to his migraine headaches, and makes it more difficult for him to sleep. Plaintiff Carl Doughty testified that not being able to smoke makes him restless, impatient and combative. He also testified that his relationship with his girl friend has been adversely affected by stress and tension brought about by not being able to smoke. Plaintiffs and several other past and present inmates testified that cigarettes are frequently smuggled in despite the ban. The fact that some inmates have cigarettes while others do not has caused arguments between inmates due to inflated prices for cigarettes. One inmate, Mr. Dirk Milburn, testified that cigarettes smuggled into the jail cost twenty times the normal price. Another inmate, Ms. Sandra McClure testified that she has paid $20 for a pack of cigarettes. Furthermore,

1. U.S. Department of Health and Human Services, *Reducing the Health Consequences of Smoking, 25 Years of Progress*, Report of the Surgeon General, 1989, p. vii.

2. United States Department of Health and Human Services, *Reducing the Health Consequences of Smoking, 25 Years of Progress*, Report of the Surgeon General, 1989, p. i.

3. United States Department of Health and Human Services, *Reducing the Health Consequences of Smoking, 25 Years of Progress*, Report of the Surgeon General, 1989, p. 161.

4. Committee on Passive Smoking, Board on Environmental Studies and Toxicology, *Environmental Tobacco Smoke, Measuring Exposures and Assessing Health Risks*, Report of the National Research Council, 1986, p. 296.

because cigarette smoking is considered a rules violation, if the guards discover smoking or possession of tobacco by an inmate, the inmate can be disciplined and sent to the jail's solitary confinement section. One non-smoking inmate, Mr. Neil Lopez, testified that he has no objection to allowing smoking in the jail.

Raymond Leidig, M.D., as an expert on psychiatric problems of persons confined in jails, stated that nicotine is both physically and psychologically addicting. He stated that nicotine in tobacco is a drug, just as addictive as cocaine or heroin. Dr. Leidig further testified that withdrawal of smoking privileges has a greater effect on persons in jail, since they are already under a great deal of stress. Dr. Leidig stated that the physical and psychological effects of nicotine withdrawal include restlessness, irritability, depression and loss of appetite. However, Thomas Crowley, M.D., director of addiction research and treatment at the University of Colorado Health Sciences Center and a psychiatrist, testified that the effect of withdrawal of nicotine is rather mild, and lasts only a short period of time. For that reason, most smokers simply stop smoking without treatment. In his opinion, anxiety associated with cessation of smoking would cease within a matter of days or weeks. Dr. Crowley testified that nicotine interferes with receptors within the nervous system, and thereby affects the behavior of the smoker, driving continued use. Dr. Crowley also testified that there are no medical benefits from cigarette smoking.

Both Dr. Leidig and Dr. Crowley expressed agreement with the Surgeon General's conclusions as to the danger of cigarette smoking to smokers and non-smokers.[5] Among the conclusions of the United States Surgeon General's 1986 report are that "[i]nvoluntary smoking is a cause of disease, including lung cancer, in healthy nonsmokers" and that "[t]he simple separation of smokers and nonsmokers within the same air space may reduce, but does not eliminate, the exposure of nonsmokers to environmental tobacco smoke."[6] Dr. Crowley testified that 320,000 premature deaths per year are caused by tobacco. The figure was estimated to be 390,000 per year in the 1989 report of the United States Surgeon General.[7] Dr. Crowley testified that he agrees with the Surgeon General's 1988 report that the nation should aim for a smoke-free society by the year 2000. He emphasized that cigarette smoking greatly contributes to a national health problem.

### III.

Plaintiffs argue that the county's no-smoking policy infringes on the inmates' constitutional right to smoke, in violation of the fourteenth amendment to the United States Constitution. We disagree.

In *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), the Court considered the claim of pretrial detainees that double-bunking, prohibition against receiving books not mailed directly from the publisher, body-cavity searches, prohibition against receipt of packages, and surprise inspections of rooms, violated the detainees' fourteenth amendment rights. The Court found that all of the above policies were constitutionally permissible. In doing so, the Court rejected the argument that jail officials must demonstrate a compelling necessity for the conditions or restrictions. *Id.* at 532, 99 S.Ct. at 1870. Rather, the Court held that the first step in inquiring whether a policy violates the Fourteenth Amendment is a determination as to whether the policy is punishment. *Id.* at 535, 99 S.Ct. at 1871. A policy is not punishment if there is no showing of intent to punish, and

---

5. *See* U.S. Department of Health and Human Services, *The Health Consequences of Involuntary Smoking*, Report of the Surgeon General, 1986; U.S. Department of Health and Human Services, *The Health Consequences of Smoking, Nicotine Addiction*, Report of the Surgeon General, 1988.

6. United States Department of Health and Human Services, *The Health Consequences of Involuntary Smoking*, Report of the Surgeon General, 1986, p. 7.

7. United States Department of Health and Human Services, *Reducing the Health Consequences of Smoking, 25 Years of Progress*, Report of the Surgeon General, 1989, p. 161.

it is reasonably related to a legitimate government objective. *Id.* at 538–39, 99 S.Ct. at 1873–74.

Plaintiffs do not contend that the no-smoking policy itself is intended to punish, but argue that it is not reasonably related to a legitimate governmental objective. Plaintiffs contend that the policy infringes on the inmates' constitutional right to smoke. Plaintiffs also contend that the policy is unreasonable because any governmental purpose could be accomplished by setting aside certain areas for smoking, instead of banning smoking altogether.

■ There is no constitutional right to smoke in a jail or prison; deprivation of smoking privileges must be examined according to the *Bell v. Wolfish* rationale. Here, the county has instituted its no-smoking policy as part of a county-wide policy prohibiting smoking in any public building. The objectives of the county officials are both legitimate and commendable. The restriction protects the rights and health of non-smoking guards and inmates, eliminates potential fire hazards, provides for a clean living environment, and is therefore reasonably related to the county's goals.

Indeed, the defendants face potential liability to non-smoking inmates if the risk to health caused by cigarette smoking was not removed. *Franklin v. Oregon*, 662 F.2d 1337 (9th Cir.1981); *Beeson v. Johnson*, 668 F.Supp. 498 (E.D.N.C.1987); *Murphy v. Wheaton*, 381 F.Supp. 1252 (N.D.Ill. 1974). In *Avery v. Powell*, 695 F.Supp. 632 (D.N.H.1988), the court considered the claim of a non-smoking prisoner to the effect that he was being forced to breathe environmental tobacco smoke, and that this constituted cruel and unusual punishment. The court held that if the weight of scientific authority indicates that there are significant health consequences from exposure to tobacco smoke, then environmental *tobacco smoke may be cruel and unusual punishment. Id.,* 695 F.Supp. at 637. Sheriff Ed Jordan testified that he recommended that the county's no-smoking policy should not specifically exempt the jail, because to do so would expose the county to liability to non-smoking prisoners. Lieu-tenant Peggy Johnson, assistant jail administrator for the Weld County Jail, and a Deputy Sheriff, testified that two inmates informed her that they would bring suit if smoking were returned to the jail.

## IV.

■ We have considered and reject plaintiffs' contention that designated smoking areas are a practical solution. Captain Michael Metzger, jail administrator of the Weld County Jail and a Deputy Sheriff, testified that the jail was expanded in January of 1986, and other renovations were completed in 1988 and 1989. The jail now has a capacity for 204 inmates. Captain Metzger testified that the jail is not overcrowded at present, but that he expects the jail will be overcrowded by late 1989, due to a backup in transfers to the state department of corrections. Captain Metzger related that while most of the inmates at the jail are smokers, the number of non-smoking inmates is increasing.

The evidence at trial contradicts plaintiffs' assertion that problems from cigarette smoke can be solved by setting aside smoking areas. Mr. George Sullivan, Deputy Director for the Colorado Department of Corrections was qualified as an expert in corrections. Mr. Sullivan testified that the jail's ventilation system moves only fifteen cubic feet of air per minute, and recirculates 65–75 percent of the air from within the building. While these specifications are adequate for normal use and under American Correctional Association standards, they are insufficient to evacuate cigarette smoke. Lieutenant Peggy Johnson also testified that the present ventilation system is inadequate to protect non-smokers.

The problem can not be solved by separating smoking inmates from non-smoking inmates. Neither can pretrial detainees be separated from convicted detainees in order to provide smoking privileges to the former. Lieutenant Johnson testified that the inmates at the Weld County Jail are divided into ten different holding areas or "pods," which are located among the jail's three floor levels. The holding areas include (1)

holding area for new inmates, (2) area on the first floor for twenty inmates sentenced to work release programs by the court, (3) area on the first floor for eight juveniles, (4) "B" pod area on the second floor for thirty-four first-time offenders with little experience in jail procedures, (5) "C" pod area on the second floor for thirty-two inmates who have previous experience with the criminal system, (6) pod on the second floor between the "B" and "C" pods for eleven jail trustees, (7) "A" pod area on the second floor for females, (8) "F" pod area on the third floor for twenty-five inmates involved in minor crimes or older inmates, (9) "G intake" area on the third floor for eleven inmates with special medical or psychiatric problems, and (10) the "G max" disciplinary area on the third floor for inmates who have violated the jail's rules. *See* Plaintiffs' Exhibit 4. Mr. George Sullivan testified that the classifications used by Weld County are those normally used in jails, and are regarded as important in jail administration. These classifications could not be maintained if non-smoking prisoners were separated from smoking prisoners, or if pretrial detainees were separated from other inmates. For that reason, Mr. Sullivan testified that it would not make correctional sense to separate smokers from non smokers.

Even if non-smoking inmates could be separated, other goals in addition to protection of non-smoking inmates could not be realized. Sheriff Jordan testified that the jail's guards, most of whom do not smoke, are stationed within the inmates' living areas and are required to serve twelve hour shifts. Lieutenant Peggy Johnson testified that these non-smoking officers could not be protected from overall exposure to environmental tobacco smoke by designating smoking areas. Mr. George Sullivan testified that the no-smoking policy is also reasonably designed to prevent damage to bedding, mattresses, doors and windows from smoking. Eliminating cigarette smoke also enables guards to smell other types of contraband. The smoking ban protects the health of the smoking inmates, and eliminates significant costs related to smoking. All of these are legitimate governmental objectives to which the no-smoking policy is reasonably related.

Plaintiffs contend that the jail could allow prisoners short smoking breaks in two of the jail's areas which are exposed to outside air. However, Mr. George Sullivan testified that such a policy would cost the county a total of $216,762 per year, because the jail would have to install fans to evacuate cigarette smoke, install new television monitoring equipment, and provide extra guards to escort the inmates to the smoking areas and to monitor them.

## V.

Plaintiffs contend, on behalf of detainees who have been convicted and are awaiting transport or who have been sentenced to serve terms at the Weld County Jail, that the prohibition against smoking is cruel and unusual punishment in violation of the eighth amendment to the United States Constitution. However, plaintiffs have not demonstrated that prohibiting inmates from smoking violates "the evolving standards of decency that mark the progress of a maturing society," or that it "involve[s] the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102–03, 97 S.Ct. 285, 290, 50 L.Ed.2d 251. *Accord Cruiess v. Matty*, No. 87–3794, slip op., 1987 WL 13348 (E.D. Penn. July 1, 1987). Rather, the evidence suggests that the jail officials attempted to make imposition of the policy as easy as possible on the inmates. The jail provides some counseling and medical assistance to inmates who request it, and has video-taped movies on quitting smoking available.

As Weld County Sheriff, defendant Jordan is faced with the obligation to formulate rules to implement the county's no-smoking policy. Captain Michael Metzger testified that the jail staff is charged with impounding smoking materials and disciplining those who possess tobacco for a rules violation. The no-smoking policy itself is not a punishment, but the jail provides punishment for breaking the rule. Captain Metzger was disciplined for smoking in the jail, and was given a day's suspension and a fine for failing to report

another guard who smoked in the jail. The evidence indicates that Sheriff Jordan is making an effort to fairly and uniformly implement the county's no-smoking policy within the jail. This effort extends to inmates and the correctional and custodial staff.

As noted, Dr. Leidig and Dr. Crowley testified that nicotine is an addicting drug. The court recognizes that forced breaking of this addiction contributes to the stress suffered by inmates at the jail. However, the county has legitimate, non-punitive reasons for the no-smoking policy. Ideally, a policy which entirely prohibits inmates from smoking would include a strong institutional counseling program, similar to those available for drug or alcohol dependency. This may fairly and humanely assist those inmates who care to remedy and eliminate their addiction to smoking. Broader availability of institutional counseling to assist smokers in alleviating the smoking addiction no doubt will be a subject of continued study and implementation by Sheriff Jordan, and staff and counselors. However, at this time proper deference to the informed discretion of prison or jail authorities demands that they, and not the courts, make the difficult judgments which reconcile conflicting claims affecting the security of the institution, welfare of the jail or prison staff, and health and hygiene considerations of inmates. *Block v. Rutherford*, 468 U.S. 576, 591, 104 S.Ct. 3227, 3235, 82 L.Ed.2d 438 (1984); *Bell v. Wolfish*, 441 U.S. 520, 557 n. 38, 99 S.Ct. 1861, 1884 n. 38, 60 L.Ed.2d 447 (1979). Whether or not to allow smoking, where the policy is not arbitrary, purposeless, or intended to punish, is a matter to be left to prison or jail officials.

ACCORDINGLY, we find the issues joined in favor of The Board of County Commissioners for the County of Weld, State of Colorado and Ed Jordan, defendants, and against Carl Doughty and Larry Wilson, plaintiffs. We therefore deny plaintiffs' complaint for injunctive and other relief. It is hereby ordered that the Clerk of the Court is directed to enter judgment in favor of defendants and against plaintiffs, each party to pay their own costs.