**Abner WASHINGTON, Plaintiff,**

**v.**

**Eleanor TINSLEY, et al., Defendants.**

**Carl DAVIS, et al., Plaintiffs,**

**v.**

**Johnny KLEVENHAGEN, et al., Defendants.**

**Civ. A. Nos. H–92–2039, H–92–2045.**

United States District Court, S.D. Texas.

Dec. 16, 1992.

Abner Washington, pro se.

Carl Davis, pro se.

No appearance for defendants.

## OPINION ON DISMISSAL

HUGHES, District Judge.

1. *Introduction.*

The City of Houston adopted an ordinance that prohibits smoking in public buildings, including the Harris County jail.

Six people who are awaiting trial in the jail have urged that the smoking ban violates their rights. It does not.

### 2. *The Smokers' Contentions.*

The smokers contend that:

A. They are being punished before they have been convicted of a crime;

B. Their being forced to suffer nicotine withdrawal is cruel and unusual punishment;

C. After being forced into withdrawal, they are being denied appropriate medical care;

D. Their property is being taken without compensation through confiscation of tobacco products as contraband;

E. Their inability to purchase or use tobacco products causes them irreparable loss in violation of the Fifth Amendment;

F. Their right to governmental regularity is violated by unequal enforcement of the ban;

G. Their safety is unreasonably threatened by the increase in the likelihood of fighting in the jail caused by the ban; and

H. Their right to governmental regularity is violated by application of the ban to the jail because it is not a public building.

### 3. *Standard for Pauper's Cases.*

■ The smokers have applied to proceed as paupers, and they will be given leave to proceed without payment of fees. 28 U.S.C. § 1915(a). A district court has broad discretion to determine on its own motion whether to dismiss a pauper's complaint because it lacks plausible support in the facts or law. *Wilson v. Lynaugh,* 878 F.2d 846, 849 (5th Cir.1989) (discussing 28 U.S.C. § 1915(d)). A pauper's complaint should be dismissed as frivolous if the claim has no arguable basis in law or fact, causing the complainant's realistic chance of ultimate success to be slight. *Neitzke v. Williams,* 490 U.S. 319, 323, 109 S.Ct. 1827, 1831, 104 L.Ed.2d 338 (1989). The opportunity to complain promotes the American policy of keeping the court house open for

litigants, while the broad discretion in the trial judge guards against abuse of the access. *Wilson,* 878 F.2d at 849–50.

### 4. *The Claims.*

#### A. Punishment Without Trial.

■ The Constitution requires that the government not treat people detained before trial as convicted prisoners. U.S. CONST. amend. XIV, § 1; *see Bell v. Wolfish,* 441 U.S. 520, 531, 99 S.Ct. 1861, 1869, 60 L.Ed.2d 447 (1979). The purposes of pretrial imprisonment and its legitimate attendant restrictions of the people detained are significantly narrower than the governmental interests in convicts. It is the person's status as a convict that allows the government to punish him at all. A convicted person may be punished in a fashion not cruel and unusual or otherwise unconstitutional. U.S. CONST., amend. XIII.

Because he is not yet convicted, a pretrial detainee's conditions of confinement may not punish. By its very nature, however, pretrial detention is a drastic deprivation of numerous components of individual liberty. The question that the smokers should put constitutionally is: Does a particular imposition on a pretrial detainee reasonably relate to a legitimate governmental objective? Because punishment is not a legitimate objective in the case of pretrial detention, the restriction must relate to an articulable, plausible non-punishment goal of the government. If a restriction is arbitrary, one compelling inference is that the government is punishing the people for being accused. *Jones v. Diamond,* 636 F.2d 1364, 1369 (5th Cir.1981) (*en banc*), *overruled on other grounds, International Woodworkers of America v. Champion Int'l Corp.,* 790 F.2d 1174 (5th Cir.1986).

First, the government instituting the ban on smoking is not the government that has detained the smokers directly. The prohibition of smoking in public buildings is a legislative act of the City of Houston, while the indictment and detention, as well as the actual facility of detention, are functions of

Harris County. Both are creatures of the state of Texas, but coordination in this instance is impossible to imagine.

Second, the city's ban affects all public buildings. The city did not enact an ordinance banning smoking in jails only; it did not even adopt one that disproportionately affects inmates. The city has instituted a formal city-wide policy prohibiting smoking in public buildings. The ban protects the health of smoking and non-smoking workers and visitors within the reasonable bounds of current social and scientific thinking. It eliminates a fire hazard. It reduces property damage from less than a full-scale fire. It reduces litter and ash. In the jail context, it also enables guards to smell other types of contraband. These are legitimate governmental objectives that are reasonably related to the no-smoking policy, so the ban cannot be construed as punishment.

B. Cruelty.

■ The smokers have alleged that the smoking ban amounts to cruel and unusual punishment, which is forbidden by the Constitution. What constitutes a punishment that is cruel and unusual is determined by referring to the "evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gambel,* 429 U.S. 97, 102–103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976). Because the smokers in this suit are not being punished, the constitutional restriction of what types of harm may be inflicted as punishment does not involve them.

Because punishment may not be inhumane, it is obvious that pretrial detention may not be inhumane. *Bell,* 441 U.S. at 531, 99 S.Ct. at 1869. Because the smokers are representing themselves and are confined, the claim that they are being impermissibly punished will be recast as a question about the proportionality of the harm inflicted to the governmental interest achieved. Even if there is a rational relation between articulable governmental interests and the ban, the degree of imposition that it necessitates could be large

enough that it would be irrational to enforce such a high cost for so modest a gain. Would a deliberate, reasonable society conclude that smoking ought to be allowed in public buildings in those cases where the non-employee occupants were there involuntarily? Especially, as the ban on smoking extends to all classes of smoking non-employees, the voluntary aspect does not make the inmates' claim distinct from public hospital patients, jurors, or a woman standing in line at the car registration window; ·they are all involuntarily in places where they may not smoke, which varies only in degree from the situation of the pretrial prisoners.

The smokers have argued that, because they are obliged to occupy a public building for months at a time, they are forced to suffer nicotine withdrawal. The physical and psychological addiction to nicotine from cigarettes causes withdrawal symptoms, including restlessness, irritability, depression, and an increase or decrease in appetite. The length and severity of the withdrawal varies with individuals. On the average, the discomfort that attends a cessation of tobacco use is moderate. Compared to the other impositions of pretrial confinement, withdrawal is not disproportionate to the good achieved. The proportionality must be considered in the light of the good sought through both the smoking ban itself and the detention.

■ Although the Constitution protects individuals from conditions of confinement that threaten their health, it cannot and does not protect against the conditions of discomfort or inconvenience that are the natural consequence of imprisonment. *Wilson,* 878 F.2d at 849. Smokers required to quit on arrest will suffer, but their suffering is only slightly different from the mental and physical disruption that other prisoners suffer from the loss of their eating, exercise, sex, drinking, and sleeping patterns when they are free. Like nicotine withdrawal, these reactions will be uncomfortable, but they are not hazards to health. On the contrary, smoking is a health hazard. The degree of harm may

still be under debate, but no one ever—even long before the surgeon general got into the fray—thought smoking was good for the smoker. *See, e.g., Doughty v. Board of County Commissioners For County of Weld,* 731 F.Supp. 423, 424–25 (D.Colo.1989) (discussing reports of the U.S. Department of Health and Human Services).

### C. Differential Medical Care.

The smokers have noted that medical care and counseling are furnished to employees who work in the jail and who are affected by the ban. Because these affected groups receive medical care, the smokers argue that they too should receive medical care.

■ The smokers have not pleaded that anyone suffering an actual medical necessity, rather than an adjustment assistance need, has been denied competent medical treatment. The government has the duty to supply reasonable medical care to the people it detains, unless it can show how the denial of care is reasonably related to a legitimate governmental objective. *Cupit v. Jones,* 835 F.2d 82, 85 (5th Cir. 1987). The smokers' complaints are that (a) they are being treated differently from another group of similarly situated individuals and that (b) the difference in treatment is not related to a distinction that the government can legitimately draw.

The people in pretrial detention are hardly situated as the guards are. The guards receive numerous governmental benefits that the prisoners do not, the least of which is the absence of counseling about tobacco. The guards are free. They get paid. They get holidays. And, yes, they get medical benefits.

The decision to provide medical care to employees only, withholding it from inmates, is solidly rational. If they were not given assistance to reduce the effects of nicotine withdrawal, some employees faced with a smoking ban would quit their county job in favor of one where they could smoke. This causes a loss of experience and training investment as well as the costs of finding and training replacements. Also, some employees' job performance would decline as they suffer withdrawal, reducing the public's return. Non-smokers' productivity might decline as they are obliged to work with uncounseled, irritable quitters. None of these factors apply to a pretrial detainee.

### D. Deprivation of Property.

The smokers claim that, when the county confiscates tobacco products as contraband, it is taking their property without compensation in violation of the Constitution. The jail "takes" two kinds of tobacco: Tobacco in the possession of the person when he is brought to the jail and tobacco that is discovered in his possession during the incarceration.

■ Tobacco seized on arrival is stored with the inmate's other belongings that are prohibited within the jail. This is returned to the inmate on his release, so the inmate loses no property. If the tobacco is seized while the inmate is in the jail, the county may take it because its possession is in violation of a known, rational regulation for the administration of the jail. *See, e.g., United States v. Farrell,* 606 F.2d 1341, 1344 (D.C.Cir.1979).

### E. Purchasing.

■ The smokers also complain that not being allowed to buy tobacco while in jail is particularly violative of some liberty interest. The inmates, of course, have no property right in articles they have not purchased. The deprivation of their freedom to acquire and use property and to contract is abridged only incidentally to the deprivation of their basic freedom; if the detention itself is constitutional, the specific natural consequences to an individual inmate are lawful.

### F. Equal Protection.

■ The smokers contend that the smoking ban violates their rights to a gov-

ernment that applies the laws uniformly. The Constitution requires that all governments treat people the same unless there is an articulable, rational justification in terms of the policy in question to treat them differently. Simply put, the Constitution requires the government to treat similar people similarly; that is the essence of the rule of law.

The ban applies to everyone in a public building. The ban prohibits smoking by detainees, convicts, guards, clerks, chaplains, and the sheriff. The smokers do not claim that the no-smoking policy has been applied unequally at the jail. They do not suggest that members of some of these groups are allowed to smoke. Their uneven enforcement claim comes from news reports that some of the judges refuse to abide by the ordinance. These judges do not work in the Harris County jail, and they do not work for the sheriff. Nothing distinct is happening to anyone in the jail or sheriff's department.

No one could argue that the judges are a distinct group within the genus of people who use public buildings. A few people, who happen to be judges, using their rights to free expression to make fools of themselves by announcing that they believe that their bad habits are superior to the law does not rise to the level of selective enforcement by the sheriff, county, or city.

### G. Safety.

The smokers complain that the smoking ban increases the likelihood of violence among the inmates. The government must operate the jail to maintain the inmates' safety. *Alberti v. Sheriff of Harris County,* 406 F.Supp. 649, 669 (S.D.Tex. 1975). Courts are only in the business of running detention facilities when the government instituting them cannot follow their independent obligation to obey the Constitution. U.S. CONST. art. VI, ¶ 3. The Harris County jail has to find the means to obey the United States Constitution and the City of Houston ordinance. If the likelihood of trouble among inmates is actually increased by the smoking ban, the county

will add guards or otherwise compensate for this development. The smokers do not allege that the jail has failed properly to respond and to maintain the safety of the inmates.

### H. Application to the Jail.

From the obvious fact that access to the jail is highly restricted, the smokers argue that the jail is not a public building. Buildings are public when they are used primarily for governmental purposes; the Harris County jail is a public building. *Dancy v. Davidson,* 183 S.W.2d 195, 198 (Tex.Civ.App.—San Antonio 1944, no writ).

If the ban may be enforced against any county-owned building, it may be enforced against the jail. Op.Tex.Att'y Gen. No. JM–737 (1987). The City of Houston is incorporated as a home-rule municipality; that means it may enforce ordinances to protect health, life, and property. Tex.Loc.Gov't Code Ann. § 54.004 (1988). Generally, counties are not immune from city ordinances. Op.Tex. Att'y Gen. No. MW–508 (1982). This municipal no-smoking ordinance is applicable to county facilities within the city. Under Texas law, a city may not legislate in a field only if the state statutes indicate that the legislature intended state law to occupy exclusively the field. Legally and historically, counties are administrative units of a state, usually without authority to legislate except in a few odd instances. ALEXIS DE TOCQUEVILLE, DEMOCRACY IN AMERICA 81 (Phillips Bradley ed., 1945); Tex.Local Gov't Code Ann. § 243.003 (1992) (giving counties authority to regulate sexually oriented businesses). Because the state legislature adopted nothing showing an intent to occupy this field, the smoking ordinance is enforceable against county facilities, including the jail.

### 5. *Conclusion.*

A smoking policy is both subject to evolving standards within the community and not remotely related to the fundamental aspects of liberty necessary for individual autonomy. Smoking policy is to be re-

solved by the executive and legislative branches of government, and Houston has determined that smoking should be prohibited in public buildings. *See Gorman v. Moody,* 710 F.Supp. 1256, 1262 (N.D.Ind. 1989); *Caldwell v. Quinlan,* 729 F.Supp. 4, 7 (D.D.C.1990). Houston's policy offends none of the procedural or substantive requirements of the Constitution.

The smokers have not presented claims that have a realistic chance of ultimate success; therefore, the smokers' complaints will be dismissed with prejudice.