Hassan AUSTIN, Plaintiff,

v.

Joseph D. LEHMAN, et al., Defendants.

Civ. A. No. 93–6163.

United States District Court,
E.D. Pennsylvania.

July 6, 1995.

Hassan Austin, Camp Hill, PA, pro se.

Randall J. Henzes, Office of Atty. Gen., Philadelphia, PA, for defendant.

*MEMORANDUM*

ANITA B. BRODY, District Judge.

Plaintiff, a *pro se* prisoner, commenced this action under 42 U.S.C. § 1983. He alleges that his Eighth and Fourteenth Amendment rights under the United States Constitution were violated when officials at the State Correctional Institution ("SCI") at Frackville denied him his bi-weekly allotment of free cigarettes and denied him his right to purchase cigarettes for a six week period of his confinement in disciplinary custody there. Named as Defendants are the Commissioner of the Pennsylvania Department of Corrections, the Superintendent at SCI Frackville, and the Superintendent's Assistant. Before me is Defendants' motion for summary judgment. For the reasons set forth below, I grant it.

**I. FACTS**

The following facts either are undisputed or represent Plaintiff's version of the events underlying this litigation. Those events began on June 3, 1993, when Plaintiff was transferred from SCI Huntingdon to SCI Frackville. Ex. 1 to Defs.' Mot. for Summ.J., at 5. Upon arrival at SCI Frackville, Plaintiff was placed in administrative custody in the prison's Restricted Housing Unit ("RHU"), where he underwent an orientation as part of being processed for admission to

the prison's general population. *Id.* at 6. Among the topics discussed during this orientation was whether Plaintiff smoked cigarettes. Plaintiff had smoked in the past but was not smoking when he entered SCI Frackville, and he advised the orientation staff that he was not a smoker. *Id.* at 6, 13–14.

On June 9, 1993, Plaintiff was placed in the disciplinary custody wing of the RHU at SCI Frackville for misconduct unrelated to this action. *Id.* at 7. Sometime during this confinement in disciplinary custody, Plaintiff began to smoke again. *Id.* As an indigent inmate in disciplinary custody, Plaintiff was entitled under prison administrative directives then in force to one free package of cigarettes every two weeks. *Id.* While applicable directives also permitted inmates in disciplinary custody to purchase a similar quantity of cigarettes from the prison commissary, Plaintiff lacked the funds to avail himself of this permission and was dependent for his smoking habit on the free cigarettes provided by the prison. *Id.* at 11, 16–17. Plaintiff received his free bi-weekly cigarette allotment until sometime in late July or early August of 1993, consuming most of it himself and "sharing" the balance with other prisoners. *Id.* at 14–15. On an allotment date in late July or early August of 1993, neither Plaintiff nor the other indigent prisoners in his disciplinary custody wing received their bi-weekly allowance of free cigarettes. *Id.* at 15–16.

In response, Plaintiff filed a grievance with Defendant James Forr, the Superintendent's Assistant at SCI Frackville. Forr Aff., Ex. 2 to Defs.' Mot. for Summ.J., ¶ 3. On August 10, 1993, Defendant Forr personally interviewed Plaintiff about the withholding of his cigarette allotment; on August 13, 1993, Defendant Forr issued a letter formally denying Plaintiff's grievance. *Id.* ¶¶ 4–5. As grounds for his decision, Defendant Forr cited Plaintiff's orientation classification as a non-smoker and suggested that Plaintiff was using prison-provided cigarettes as a form of currency, a practice forbidden under prison policy. Ex. B. to Forr Aff. Defendant Forr also informed Plaintiff in the letter that the prison officer on duty had contradicted Plaintiff's assertion that there was no cigarette distribution on the date in question. *Id.* On August 15, 1993, Plaintiff appealed Defendant Forr's decision to Defendant Chesney, the Superintendent of SCI Frackville, who affirmed it on August 19, 1993. Forr Aff. ¶¶ 6–7. Plaintiff then pursued his appeal to the Pennsylvania Department of Corrections' Central Office Review Committee, which, on September 10, 1993, affirmed the decisions of Defendants Forr and Chesney. Forr Aff. ¶ 9. That same day, Plaintiff was released into the general prison population at SCI Frackville. Pl.'s Dep. at 10.

This civil rights action followed. Plaintiff's claims, all of which are based on the denial of his bi-weekly cigarette allotment between late July or early August, 1993, and September 10, 1993, and on the alleged denial of his right to purchase cigarettes from the prison commissary during the same period, assert violations of the Eighth Amendment's ban on cruel and unusual punishment and of the Fourteenth Amendment's Due Process and Equal Protection Clauses.[1]

Defendants have now moved for summary judgment, contending that on the uncontested facts set forth above Plaintiff's claims are deficient as a matter of law. In response, Plaintiff counters none of Defendants' factual assertions but merely repeats the ultimate conclusions in his complaint that the deprivations at issue here violated his constitutional rights. Pl.'s June 22, 1995, Aff. in Response to Mot. for Summ.J. ¶¶ 18–20.[2] Notwithstanding Plaintiff's failure to challenge Defendants' factual contentions, I have resolved

---

1. Technically, the substance of the Eighth Amendment is applied to the states through the Fourteenth Amendment. Nonetheless, I analyze Plaintiff's cruel and unusual punishment argument with Eighth Amendment terminology for clarity's sake.

2. Plaintiff also asserts in his response that Defendants have admitted the factual averments in his complaint by failing to deny them. Pl.'s June 22, 1995, Aff. in Response to Mot. for Summ.J. ¶¶ 14–17. This is simply not true. Defendants filed and served on October 13, 1994, their Answer and Affirmative Defenses to Plaintiff's Amended Complaint, which denies virtually all of Plaintiff's material allegations. Defs.' Answer ¶¶ 29–37, 38–40.

all possible factual disputes for Plaintiff, and I have viewed the evidence here in the light most favorable to him. After doing so, I agree that Defendants are entitled to summary judgment. Plaintiff, who was admittedly indigent during the relevant period, lacks standing to challenge the alleged denial of his right to purchase cigarettes from the prison commissary. As for the denial of Plaintiff's bi-weekly cigarette allotment, I conclude that it does not rise to the level of an Eighth Amendment violation. I also conclude that the denial of free cigarettes constitutes no due process violation because it implicates no protected interest and because the post-deprivation remedies that were and still are available to Plaintiff are sufficient to satisfy the demands of the Due Process Clause. Finally, Plaintiff cannot establish an equal protection violation based on Defendants' failure to provide him with free cigarettes because there is no evidence that Plaintiff was treated any differently in this respect than other indigent inmates confined in disciplinary custody.

## II. DISCUSSION

Summary judgment is appropriate where the moving party establishes that there are no genuine issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 321, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). An issue is not "genuine" unless the record contains evidence sufficient for a reasonable jury to find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986). A fact is not "material" unless it would affect the outcome of the action under the governing law. *Id.,* at 248, 106 S.Ct. at 2510. On a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party. *Mellon Bank Corp. v. First Union Real Estate Equity & Mortgage Invs.,* 951 F.2d 1399, 1404 (3d Cir.1991). Nonetheless, where the non-moving party cannot raise a genuine fact issue with respect to an essential element of his case, that inability necessarily renders all remaining fact disputes immaterial as a matter of law. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

### A. Denial of Right to Purchase Cigarettes

As a threshold matter, Plaintiff lacks standing to pursue his claims based on the alleged denial of his right to purchase cigarettes from the prison commissary. Because the uncontradicted evidence in the record discloses that Plaintiff had no funds with which to purchase cigarettes while confined in disciplinary custody, Ex. 1 to Defs.' Mot. for Summ.J., at 11, 16–17, Plaintiff was effectively reduced to the status of a "non-purchaser" during the relevant period. Thus, much like a non-smoker, he cannot have been aggrieved by being prohibited from purchasing cigarettes. *See Beauchamp v. Sullivan,* 21 F.3d 789, 790–91 (7th Cir.1994) (non-smoking inmate lacked standing to challenge constitutionality of prison smoking policy). Stated in the parlance of standing doctrine, Plaintiff cannot show that denying him the right to purchase cigarettes "cause[d] [him] injury that would be redressed, in a non-speculative way, by an order precluding" Defendants from having done so. *Washington v. Reno,* 35 F.3d 1093, 1102 (6th Cir.1994) (finding, based on this standard, that inmates enjoyed standing to challenge proposed prison conversion from collect-call telephone system to direct-dial telephone system). Plaintiff's injury having been entirely speculative, Defendants are entitled to summary judgment on his "right to purchase" claims.

### B. Denial of Free Cigarettes

Also without merit are Plaintiff's claims challenging the withholding of his bi-weekly allotment of free cigarettes for the period of his disciplinary custody at issue here. These claims, asserted under the Eighth Amendment's ban on cruel and unusual punishment and under the Fourteenth Amendment's Due Process and Equal Protection Clauses, are addressed *seriatim.*

#### 1. Eighth Amendment Claim

Plaintiff contends that Defendants, in violation of the Eighth Amendment, inflicted cruel and unusual punishment upon him by denying him his bi-weekly portion of free cigarettes. The Eighth Amendment guarantees an inmate only the "minimal civilized

**452**

measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981). To prevail on this claim, Plaintiff must show that the denial of free cigarettes was implemented with a punitive intent not reasonably related to a legitimate governmental objective. *Bell v. Wolfish*, 441 U.S. 520, 538–39, 99 S.Ct. 1861, 1873–74, 60 L.Ed.2d 447 (1979). Additionally, Plaintiff must demonstrate that it violated "the evolving standards of decency that mark the progress of a maturing society" or involved "the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976) (citations omitted).

■ These well-established standards under the Eighth Amendment are intended to limit liability to those situations that involve objective and fundamental abridgements of inmates' welfare. Thus, it is no surprise that courts routinely insulate from Eighth Amendment attack both partial and total restrictions on an activity as marginally related to prisoners' basic well-being as cigarette smoking. *See Grass v. Sargent*, 903 F.2d 1206, 1207 (8th Cir.1990) (ban on smoking in prison visitation area during visiting hours does not deprive inmates of "minimal civilized measure of life's necessities" under *Rhodes*); *Beauchamp v. Sullivan*, 21 F.3d 789, 790 (7th Cir.1994) (affirming dismissal of "frivolous" Eighth Amendment challenge to prison smoking regulations); *Reynolds v. Bucks*, 833 F.Supp. 518, 520 (E.D.Pa.1993) (prison smoking ban does not violate Eighth Amendment given widely recognized health hazards associated with cigarettes and given need to protect prison equipment from smoke damage); *Smith v. Lehman*, No. 91 Civ. 5886, 1992 WL 252772, at *6–*7 (E.D.Pa. Sept. 25, 1992) (denial of free tobacco to inmates in disciplinary custody does not constitute "wanton and unnecessary infliction of pain" prohibited by Eighth Amendment); *Washington v. Tinsley*, 809 F.Supp. 504, 507–08 (S.D.Tex.1992) (city ordinance prohibiting smoking in jail and other public buildings not violative of Eighth Amendment).

■ In accord with the intuitive result of these case, I find that the deprivation of Plaintiff's bi-weekly cigarette allotment does not rise to the level of an Eighth Amendment violation. Rationally, the label "cruel and unusual punishment" simply cannot characterize the decision to cease providing prisoners in disciplinary custody a luxury item such as cigarettes free of charge. *Smith*, 1992 WL 252772, at *6–*7.

■ Moreover, any nicotine-related suffering endured by Plaintiff was reasonably related to a legitimate penological objective and thus was not caused by the "wanton and unnecessary infliction of pain." *See Reynolds*, 833 F.Supp. at 520 (pain of nicotine withdrawal attendant on smoking ban "is neither unnecessary nor wanton"). In this regard, there is uncontradicted evidence in the record that Plaintiff gave some of his cigarettes to fellow prisoners and that this practice, which aroused Defendants' suspicion that Plaintiff was using his free cigarettes as a form of currency in violation of prison policy, was cited to Plaintiff as a ground for ceasing his cigarette distribution. On its face, the mere fact of an indigent inmate such as Plaintiff transferring to other inmates a commodity as dear as cigarettes could reasonably give rise to the inference that the cigarettes were being used as a medium of exchange. Once this reasonable inference is drawn (and there is no dispute here that it was), the need to control the use of contraband such as currency emerges as a manifestly legitimate prison concern. By denying Plaintiff his periodic distribution of free cigarettes, Defendants responded to this serious concern in a measured and proportional manner. Thus, the incidental discomfort caused by Plaintiff's forced nicotine withdrawal was, like many other physical disruptions justified by the valid objectives of incarceration, nothing more than "the natural consequence of imprisonment." *Washington v. Tinsley*, 809 F.Supp. at 507 (comparing discomfort of nicotine withdrawal in prison to disruption in patterns of sex, exercise, drinking and sleeping).

### 2. Due Process Claim

■ No more successful is Plaintiff's contention that the denial of free cigarettes constituted a deprivation in violation of the Fourteenth Amendment's Due Process

Clause. First, insofar as the interest at stake here is characterized as a liberty interest, it is simply not a "protected" one. The Due Process Clause itself confers on inmates no protected liberty interest in smoking or purchasing tobacco while in prison. *See Grass*, 903 F.2d at 1206 (no constitutional right to smoke in prison); *Reynolds*, 833 F.Supp. at 519 (no constitutional right to smoke in prison); *Doughty v. Board of County Comm'rs*, 731 F.Supp. 423, 426 (D.Colo. 1989) (same); *Washington v. Tinsley*, 809 F.Supp. at 508 (no constitutionally protected interest in purchasing tobacco in prison). And after the recent Supreme Court decision in *Sandin v. Conner*, —— U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), constitutional protection for such an interest cannot be derived from applicable prison directives either.[3]

▪ *Sandin* rejected a Hawaii state prisoner's argument that a prison regulation created a protected liberty interest in remaining outside disciplinary segregation absent "substantial evidence" to support a charge of misconduct. —— U.S. at ——, 115 S.Ct. at 2302. In reaching this conclusion, the *Sandin* Court jettisoned the "mandatory language" inquiry developed in *Hewitt v. Helms*, 459 U.S. 460, 471–72, 103 S.Ct. 864, 871–72, 74 L.Ed.2d 675 (1983), in favor of one that scrutinized not the regulation claimed to give rise to the asserted interest but rather the nature of the interest itself. *Id.* at ————, 115 S.Ct. at 2299–2300. Under *Sandin*'s new methodology, whose seeds were planted in the early cases of *Wolff v. McDonnell*, 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974), and *Meachum v. Fano*, 427 U.S. 215, 225, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976), the seriousness of the deprivation suffered guides the recognition of state-created liberty interests. Specifically, such interests "will generally be limited to freedom from restraint which ... *imposes*

*atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."* —— U.S. at ——, 115 S.Ct. at 2300 (emphasis added).

▪ The deprivation of cigarettes—certainly of free cigarettes—is a hardship that falls well within "the expected parameters of the sentence imposed by a court of law." *Id.* at ——, 115 S.Ct. at 2302. It is a normal incident of prison life, much like the hardship that attends prison regulation of inmates' sexual practices, sleep patterns and diet. *Cf. Washington v. Tinsley*, 809 F.Supp. at 507 (finding, for Eighth Amendment purposes, pain caused by nicotine withdrawal proportionate to other discomforts suffered by virtue of confinement); *Sandin*, —— U.S. at ————, 115 S.Ct. at 2299–2300 (collecting cases where asserted liberty interest involved ordinary incidents of prison life; examples include claims asserting right to tray lunch rather than sack lunch and right to larger cell with electrical outlet for television). Indeed, the *Sandin* dissent cited prison regulation of cigarettes and smoking as an example of a deprivation that has always been considered "comparatively unimportant" for due process purposes. —— U.S. at ————, 115 S.Ct. at 2307–08 (Breyer & Souter, JJ., dissenting). Thus, I have little difficulty concluding that the loss of the prison's bi-weekly cigarette allotment while in disciplinary custody implicates no protected liberty interest here.

▪ Second, summary judgment is appropriate here whether the asserted interest is characterized as a liberty interest or a property interest because Plaintiff has received all the process he was due. As alleged by Plaintiff, Defendants denied him his free cigarettes not pursuant to any established state procedure but rather in contravention of it, abrogating without authorization applicable directives of the Pennsylvania Department of Corrections. Accordingly,

3. The specific directive relevant here is the Pennsylvania Department of Corrections' Administrative Directive DC–ADM 801, entitled "Inmate Disciplinary and Restricted Housing Procedures." The version of DC–ADM 801 in force during the period at issue provided in part as follows:

"Smoking in the disciplinary custody status housing area will be limited to one pack of cigarettes every two (2) weeks, to be purchased from the institution commissary. Indigent inmates will be provided with one pack of Bugler or Topps every two weeks."
DC–ADM 801 § VI D. 2. (Effective Oct. 29, 1992).

the due process principles enunciated in the seminal cases of *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), and *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), require only an adequate state post-deprivation remedy. *See Hicks v. Feeney*, 770 F.2d 375, 378 (3d Cir.1985) (post-deprivation remedy allowed in *Parratt* and *Hudson* applies where deprivation was the result not of an established government procedure but of a government agent's random, unauthorized act). *See also Williams v. O'Grady*, No. 87 Civ. 8063, 1987 WL 19163, at *1 (N.D.Ill. Oct. 26, 1987) (state post-deprivation remedy of tort action for conversion was adequate to protect due process rights of prisoner whose cigarettes were wrongfully confiscated by prison guards).

 Here, Plaintiff exploited fully the internal grievance procedure provided by the Pennsylvania Department of Corrections. He pursued his grievance before Defendant Forr and took appeals from the latter's decision all the way to the Central Office Review Committee. This internal grievance procedure constituted an adequate post-deprivation remedy for any deprivation Plaintiff may have suffered. *See Jackson v. Central N.M. Correctional Facility*, 976 F.2d 740 (10th Cir. 1992) (Table), 1992 WL 236921, at *2 (Sept. 21, 1992) (Unpublished Decision; citation allowed if persuasive on material issue) (internal grievance procedure constituted adequate post-deprivation remedy for destruction and theft of inmate's property during cell search); *cf. Pew v. Cox*, No. 93 Civ. 4128, 1993 WL 418357, at *1 (E.D.Pa. Oct. 15, 1993) (internal grievance procedure at SCI Graterford was state post-deprivation remedy that had to be exhausted before bringing § 1983 claim for deprivation of property).[4]

 In addition, to the extent he has any property interest in the free cigarettes he was denied, Plaintiff still has available a state court action for its deprivation. *See Gilmore v. Jeffes*, 675 F.Supp. 219, 221 (M.D.Pa.1987) (noting availability of Pennsylvania state law action in tort for prison official's deprivation of inmate's property); *Pew*, 1993 WL 418357, at *1 (similar). The existence of this remedy, too, forecloses Plaintiff's due process claim. *See Gilmore*, 675 F.Supp. at 221 (state law tort claim is adequate post-deprivation remedy); *Williams v. O'Grady*, 1987 WL 19163, at *1 (same).

### 3. *Equal Protection Claim*

 Finally, Plaintiff asserts, in conclusory fashion, that denying him his bi-weekly cigarette allotment violated his equal protection rights under the Fourteenth Amendment. But in his deposition, Plaintiff admitted that most if not all indigent prisoners in his disciplinary custody wing at SCI Frackville were not given cigarettes during the week in question. There is no contention, moreover, that the distribution of free cigarettes resumed for those prisoners other than Plaintiff whose allotment was cut off with Plaintiff's. Thus, because there is no evidence in the record that Plaintiff was singled out from his peers for differential treatment by officials at SCI Frackville, Plaintiff's equal protection claim is without merit. *See Mazzanti v. Bogan*, 866 F.Supp. 1029, 1033 (E.D.Mich.1994) (rejecting equal protection claim of prisoner who forfeited statutory good time with drug-positive urine sample where prisoner could not demonstrate either that fellow prisoners with drug-positive samples were treated any more severely or that he was otherwise singled out for sanction) (citations omitted).[5]

---

4. Of course, that Plaintiff did not prevail in this procedure in no way affects the procedure's adequacy as a post-deprivation remedy. *See Jackson*, 1992 WL 236921, at *2 ("The fact that Plaintiff did not receive the result he desired from the [prison] grievance procedure does not mean that he was denied due process."); *Abbott v. Jackson*, No. 86 Civ. 7225, 1988 WL 26993, at *1 (E.D.Pa. Mar. 16, 1988) (prison authorities' unfavorable decision on inmate's grievance is not itself a denial of due process).

5. Insofar as Plaintiff is asserting his equal protection claim on behalf of all those inmates in disciplinary custody whose cigarette allotment was cut off, that claim fares no better. The withholding of free cigarettes from prisoners in disciplinary custody implicates no fundamental right or suspect classification, and need only withstand rational basis review. *Cf. Canell v. Bradshaw*, 840 F.Supp. 1382, 1387 (D.Or.1993) (rational basis review sufficient for claim that different prisons were accorded different privileges). On such review, even the most obvious of

## III. CONCLUSION

I have viewed the evidence in the light most favorable to Plaintiff, and I find that there is no genuine issue of material fact here. Thus, I grant Defendants' summary judgment motion in its entirety. Having had no funds to use for commissary items while confined in disciplinary custody, Plaintiff lacks standing to challenge the alleged denial of his right to purchase cigarettes during that period. As for the contemporaneous denial of Plaintiff's bi-weekly allotment of free cigarettes, that deprivation did not involve the "wanton and unnecessary infliction of pain" and thus did not violate the Eighth Amendment's ban on cruel and unusual punishment. Furthermore, because it implicates no protected liberty interest and because Plaintiff exercised or has available adequate post-deprivation remedies under state law, there is no violation of the Due Process clause here. Finally, Plaintiff's equal protection claim fails because there is no evidence that he was in any way singled out for treatment different than that accorded similarly situated inmates.

justifications—the mere unwillingness to expend scarce prison resources on luxury items such as cigarettes for disciplined prisoners—would constitute an adequately rational basis to support the challenged "deprivation". *Cf. Prows v. Department of Justice*, No. 89 Civ. 2929, 1991 WL 111459, at *3 (D.D.C. June 13, 1991) (upholding as rational commissary pricing scheme that made no concession to indigence and thus effectively denied sundries to poorer prisoners).