Dennis R. THIEL, Plaintiff,

v.

Helen NELSON and Steve Watters, Defendants.

Steve Burgess Plaintiff,

v.

Helen Nelson and Steve Watters, Defendants.

No. 05–C–715C.

United States District Court, W.D. Wisconsin.

March 24, 2006.

Jody J. Schmelzer, Assistant Attorney General, Madison, WI, for Defendants.

OPINION and ORDER

CRABB, District Judge.

These are civil actions for injunctive and declaratory relief in which plaintiffs Dennis Thiel and Steve Burgess challenge a smoking ban enacted recently at the Sand Ridge Secure Treatment Center in Mauston, Wisconsin. Plaintiffs are involuntarily committed at Sand Ridge pursuant to Wisconsin's sexually violent persons statute, Wis. Stat. ch. 980. On December 7, 2005, defendants Helen Nelson and Steve Watters removed the actions to this court from the Circuit Court for Dane County, asserting jurisdiction under the federal question statute, 28 U.S.C. § 1331. Magistrate Judge Crocker consolidated the cases in a preliminary pre-trial conference order dated January 18, 2006.

Presently before the court are defendants' motion to dismiss and plaintiffs' motion to dismiss and remand. The two motions are premised on divergent views of plaintiffs' complaints. In their motion to dismiss, defendants contend that plaintiffs' complaints raise challenges to the smoking ban under the due process and equal protection clauses as well as Wisconsin's patient's rights statute, Wis. Stat. § 51.61. Defendants also construe the complaints to raise due process challenges to the treatment plaintiffs are receiving at Sand Ridge. They request dismissal of plaintiffs' constitutional claims with prejudice and ask the court to decline to exercise supplemental jurisdiction over the state law claims. Plaintiffs disagree with defendants' characterization of the complaints, although it is difficult to pin down their position. They argue that their only intent was to bring an action for administrative review of the smoking ban under Wisconsin's declaratory judgment statute, Wis. Stat. § 227.40.[1] Elsewhere in their briefs,

---

1. Although plaintiffs do not cite Wis. Stat. § 227.40 anywhere in their complaints, they have captioned their complaints as petitions for declaratory and injunctive relief.

however, they acknowledge that they are challenging the smoking ban on constitutional grounds and under the patient's rights statute. They request that their cases be remanded to state court.

Although it may not have been plaintiffs' intent to raise constitutional challenges to the smoking ban, a fair reading of their complaint shows that constitutional claims are presented. Therefore, removal of this case was proper. Because neither the substance of the smoking ban nor the way it was implemented violates plaintiffs' rights under the due process and equal protection clauses, I will grant defendants' motion to dismiss those claims. In addition, I will grant defendants' motion to dismiss plaintiffs' claims that their conditions of confinement and treatment fall below constitutional minimums. Because no claims remain over which federal jurisdiction exists, I will decline to exercise supplemental jurisdiction over plaintiffs' state law claims and grant plaintiffs' motion to remand the cases to the Circuit Court for Dane County for proceedings with respect to those claims.

I draw the following facts from plaintiffs' complaints, which are identical in all material respects.

## ALLEGATIONS OF FACT

Plaintiffs Dennis Thiel and Steve Burgess are involuntarily committed to the custody of the Wisconsin Department of Health and Family Services pursuant to Wisconsin's sexually violent persons statute, Wis. Stat. ch. 980. They are detained at the Sand Ridge Secure Treatment Center in Mauston, Wisconsin. Defendant Helen Nelson is Secretary of the Department of Health and Family Services. Defendant Steve Watters is Director of Sand Ridge, a mental health facility designed for the care and custody of ch. 980 patients. Sand Ridge was designed and built as a prison; it is the only mental health facility with a high voltage fence around it in the United States.

Patients at the facility who display unusual or aggressive behavior or who are under investigation are moved to the units on wing A. (Some patients have been charged with crimes for their aggressive and physical behavior at the facility.) Units on wings A and B have an extra set of security doors though which patients must pass to gain access to the rest of the facility. Normally, the security doors on wing B are left open during the daytime, while the doors on wing A are opened and closed when a patient or staff member leaves or enters.

Psychiatric care technicians (technicians) are the only staff assigned to a unit for supervision of patients. Each unit has two technicians assigned to it for each working shift. Technicians are supervised by psychiatric care supervisors (supervisors). Technicians are not required to have any education or experience in working with mental health patients. They receive psychiatric training from facility staff and outside contractors. In addition, they receive training in the Department of Corrections. Supervisors are not required to have clinical education or a clinical degree. One supervisor works on each unit for the first and second working shifts, although at times a supervisor will cover more than one unit. Unit managers receive the same security training as technicians and are not required to have any clinical education or a clinical degree. Their duties are primarily administrative and they do not interact much with patients.

Units A and B contain three offices that are shared by the unit manager, social worker, counselors and treatment providers. These individuals do not interact with patients on a daily basis; they process paperwork or provide group treatment in the treatment mall. No more than five

licensed psychologists work full-time at the facility. Lloyd Sinclair, the Associate Treatment Director, and Nick Yachovich, the Corrective Thinking Program Coordinator, are not licensed psychologists.

The Corrective Thinking Program focuses on identifying and correcting a patient's "problem areas." It provides treatment for patients who are rated medium or high on the psychopathy check list. The Conventional Program is a program for sex offenders. Patients in the program are pressured to take polygraph exams that probe their sexual histories and sexually assaultive behaviors. Patients are pressured also to take plethysmograph tests, which measure their sexual arousal patterns. Refusal to take these tests is considered a refusal of treatment; until a patient consents to the tests, no further treatment is provided. However, patients are given individual treatment to help them overcome objections they have to taking the tests. The facility does not provide anger management treatment.

When plaintiffs need to speak with clinical staff, they must put in a patient request. A technician initials the request and gives it to a supervisor, who answers the request by delivering a response to the patient personally or placing a response in the unit mail box. In a similar fashion, a patient who needs to speak with someone about a medical issue must complete a medical request form and place it in the medical request box. Medical requests are picked up once each day. Generally, responses to medical requests are delivered to patients the same day. From the time a patient's medical request is received, he may wait from one day to one month to see the requested individual.

Sand Ridge employs only one psychiatrist for all of the patients at the facility. Because of the large number of patients, the psychiatrist is unable to provide full psychiatric treatment for all of them.

When plaintiff Thiel arrived at Sand Ridge, he experienced a stress attack. He takes medication for high blood pressure, back pain and hip pain. Also, he takes medication to help him sleep. Plaintiff Burgess is diabetic; he takes Depakote, Zoloft, Trazadone and Atavin. Confinement at Sand Ridge is highly stressful at times.

In 2003, the Tobacco Control Board was transferred to the Wisconsin Department of Health and Family Services. On November 23, 2004, defendant Watters posted a notice in all of the units at Sand Ridge stating that respondent Nelson had decided that all buildings and property under the department's control would be smoke and tobacco free. At that time, smoking was permitted in the unit courtyards and outdoor recreation area. Smoking was prohibited indoors and while patients were working or in therapy. The smoking ban was to take effect on October 3, 2005, with an exemption for religious services. The Native American group at the facility smokes a ceremonial pipe, performs smudges and carries tobacco for ceremonies. Plaintiff Burgess's religious affiliation is Native American; he carries tobacco, performs smudges and smokes the ceremonial pipe each week during a talking circle. Plaintiff Thiel is Catholic; he has not been allowed to burn candles or incense as a form of religious celebration.

As part of the smoking ban, plaintiffs have received only a survey asking what their needs would be after implementation of the ban. Sand Ridge makes nicotine patches available to patients upon request. The Department of Health and Family Services continues to allow smoking at the Mendota Mental Health Institute. Because civil commitment under ch. 980 is for a potentially infinite period of time, Sand Ridge is the only place plaintiffs may ever be able to exercise their freedom of choice.

## OPINION

In considering a motion to dismiss for failure to state a claim, the court must accept as true the well-pleaded factual allegations in the complaint, drawing all reasonable inferences in favor of the plaintiff. *Hishon v. King & Spalding,* 467 U.S. 69, 72, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Moranski v. General Motors Corp.,* 433 F.3d 537, 539 (7th Cir.2005). The court may dismiss a complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6) only if " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Lee v. City of Chicago,* 330 F.3d 456, 459 (7th Cir.2003) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

Federal law provides that a civil action begun in state court may be removed to federal court if a district court would have original jurisdiction over the action. 28 U.S.C. § 1441(a). Claims that arise under federal law or the federal Constitution fall within the original jurisdiction of federal courts. 28 U.S.C. § 1331. *Moran v. Rush Prudential HMO, Inc.,* 230 F.3d 959, 966 (7th Cir.2000). "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). "As a general rule, the plaintiff is the master of his own complaint and can avoid federal question jurisdiction by pleading exclusively state-law claims." *Disher v. Citigroup Global Markets Inc.,* 419 F.3d 649, 654 (7th Cir.2005).

Despite plaintiffs' insistence that they intended only to initiate a review of the smoking ban at Sand Ridge under Wisconsin's declaratory judgment statute, Wis. Stat. § 227.40, their complaints raise several constitutional claims. *Small v. Chao,* 398 F.3d 894, 898 (7th Cir.2005) (review of pro se complaint focuses on whether facts alleged state claim under any legal theory). Specifically, I construe their complaints to raise challenges to the smoking ban under the due process and equal protection clauses of the Fourteenth Amendment. In addition, plaintiffs' complaints can be construed to raise a due process challenge to the conditions of their confinement and the treatment they are receiving at Sand Ridge and a challenge to the smoking ban under Wisconsin's patient's rights statute, Wis. Stat. § 51.61. I agree with defendants that plaintiffs' complaints and briefs on the pending motions indicate their intent to pursue these federal and state claims along with their challenge to the smoking ban under Wis. Stat. § 227.40. In this opinion, I will address only the merits of plaintiffs' constitutional claims.

### A. *Smoking Ban*

At the end of their complaints, plaintiffs invoke the due process and equal protection clauses of the Fourteenth Amendment with respect to the smoking ban. I understand plaintiffs to be alleging that (1) they have a protected liberty interest in smoking that may not be infringed absent due process and (2) they are denied equal protection of the laws because smoking is still permitted at the Mendota Mental Health Institute. Defendants argue that these claims should be dismissed because they are legally frivolous. They cite a number of cases in support of this argument, among them *Beauchamp v. Sullivan,* 21 F.3d 789 (7th Cir.1994). In that case, the Court of Appeals for the Seventh Circuit considered an inmate's challenge to prison regulations severely limiting smoking under the Eighth Amendment and the equal protection clause of the Fourteenth Amendment. The court of appeals noted

that the plaintiff had not alleged that he was a smoker and therefore had not shown that he had standing to sue. *Id.* at 790. However, rather than dismiss the complaint on a pleading technicality, a course of action that might have run afoul of the Supreme Court's admonition that pro se pleadings be construed liberally, the court of appeals addressed the merits of the plaintiff's claim and found them to be legally frivolous. It stated that "with the Supreme Court having just held that prison officials may have a constitutional duty to protect inmates from high levels of ambient cigarette smoke ... a prison could hardly be thought to be violating the Constitution by restricting smoking." *Id.* at 790–91 (citing *Helling v. McKinney,* 509 U.S. 25, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993)); *see also Alvarado v. Litscher,* 267 F.3d 648 (7th Cir.2001) (allegation that inmate was exposed to environmental tobacco smoke that aggravated his chronic asthma stated claim under Eighth Amendment). However, the court left the door cracked for challenges to a smoking ban by suggesting that a claim might exist where "the sudden withdrawal of an addictive substance like tobacco [is used] as a form of torture by police or guards." *Beauchamp,* 21 F.3d at 790.

This court relied on *Beauchamp* in denying a prisoner leave to proceed on a claim that his constitutional rights were violated when the institution in which he was housed implemented a complete ban on smoking. *Borzych v. Litscher,* No. 02–C–0128–C, 2002 WL 32350066 (W.D.Wis. Mar. 14, 2002). Nonetheless, it should be noted that *Beauchamp* was not squarely on point in *Borzych* and is not squarely on point in the present case. *Beauchamp* involved a ban on smoking inside prison buildings only; smoking was allowed in outdoor recreational areas. In contrast, *Borzych* and the present case involve complete bans on smoking by persons detained in state facilities. Thus, the question is whether an individual in state custody states a claim under the due process or equal protection clause by alleging that the institution in which he is housed has banned smoking anywhere within its control, including outdoor areas.

Before analyzing this question, I pause to pick up one point from *Beauchamp.* Like the prisoner in that case, plaintiffs have not alleged that they are smokers. However, it is logical to infer from the fact that they have brought these suits that they are. Nonetheless, because they have not alleged that they are injured by the smoking ban, dismissal of their claims for lack of standing would be appropriate. Alternatively, dismissal is warranted because plaintiffs' due process and equal protection challenges to the smoking ban are legally meritless.

### 1. *Due process*

*Beauchamp* is just one of an avalanche of cases in which federal courts have rejected constitutional challenges to smoking restrictions in prisons. *Grass v. Sargent,* 903 F.2d 1206 (8th Cir.1990); *Bartlett v. Pearson,* 406 F.Supp.2d 626, 635 n. 14 (E.D.Va.2005); *Pauley v. Dejonge,* No. CV–04–3411–MWL, 2005 WL 3303938 (E.D.Wash. Dec. 5, 2005); *Nowaczyk v. Shaheen,* No. 99–351–M, 2001 WL 276960 (D.N.H. Mar. 16, 2001); *House of Corrections Block Representatives Commission v. Creamer,* No. CIV. A. 97–6822, 1998 WL 242663 (E.D.Pa. Apr. 30, 1998); *Alley v. State,* No. 95–3010–MLB, 1997 WL 695590 (D.Kan. Oct. 15, 1997); *Austin v. Lehman,* 893 F.Supp. 448 (E.D.Pa.1995); *Reynolds v. Bucks,* 833 F.Supp. 518 (E.D.Pa.1993); *Blackwell v. Sheahan,* No. 93–C–1748, 1993 WL 135758 (N.D.Ill. Apr. 28, 1993); *Washington v. Tinsley,* 809 F.Supp. 504 (S.D.Tex.1992); *Doughty v. Board of County Commissioners,* 731 F.Supp. 423 (D.Colo.1989); *Porter v. Campbell,* No. 87–

3257, 1989 WL 122234 (D.Kan. Sept. 27, 1989). ·Some of these cases involved partial restrictions on smoking. *E.g., Beauchamp*, 21 F.3d 789 (smoking prohibited indoors); *Grass*, 903 F.2d 1206 (smoking prohibited in visitation area during visiting hours); *Austin*, 893 F.Supp. 448 (inmate prohibited from smoking while in disciplinary segregation). Others involved complete bans like the one in the present case. *E.g., Pauley*, 2005 WL 3303938; *Nowaczyk*, 2001 WL 276960; *House of Corrections*, 1998 WL 242663; *Reynolds*, 833 F.Supp. 518.

■ In upholding smoking restrictions, courts have held that smoking is not a liberty interest protected by the due process clause. *Austin*, 893 F.Supp. at 453 (citing cases). This conclusion is buttressed by the Supreme Court's decision in *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), in which it held that liberty interests in the prison context are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Although the Court of Appeals for the Seventh Circuit has not held specifically that there is no liberty interest in smoking in a state-run institution, it has extended *Sandin* to due process claims made by ch. 980 patients, *Thielman v. Leean*, 282 F.3d 478, 484 (7th Cir.2002), and its ruling in *Beauchamp* suggests strongly that it does not view smoking in prisons and other detention facilities to be a matter of constitutional importance. *Cf. Steading v. Thompson*, 941 F.2d 498, 500 (7th Cir. 1991) (decision whether to allow smoking in prison within discretion of warden).

■ Finally, I note that it is possible to construe plaintiffs's allegations as raising a claim that their rights under the due process clause were violated because defendants did not follow the procedural requirements of Wisconsin law before enacting the smoking ban. To the extent plaintiffs intended to raise this claim, it must be dismissed as well. A state's failure to follow its own laws does not violate due process. *Pugel v. Board of Trustees of University of Illinois*, 378 F.3d 659, 666 (7th Cir.2004).

2. *Equal protection*

■ With respect to the equal protection clause, the critical question is whether the smoking ban is rationally related to a legitimate penological interest, because smoking is not a fundamental right and prisoners are not a suspect class. *Romer v. Evans*, 517 U.S. 620, 631, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996). Courts considering equal protection challenges to smoking restrictions have concluded that the restrictions bear a reasonable relation to a variety of legitimate state interests, such as (1) improving the health and safety of inmates, for which the state is largely responsible; (2) reducing fire hazards; (3) maintaining clean and sanitary conditions; and (4) reducing complaints and the threat of litigation from inmates who do not smoke. *Pauley*, 2005 WL 3303938 at *4; *House of Corrections*, 1998 WL 242663 at *2; *Reynolds*, 833 F.Supp. at 520; *Washington*, 809 F.Supp. at 507. Nothing would be gained in this case by requiring defendants to incur the expense of justifying their policy when its rational relation to more than one legitimate state interest is readily apparent. Moreover, because the decision whether to allow smoking at a state detention facility resides within the discretion of the officials charged with operating that facility, the fact that patients at the Mendota Mental Health Institute retain the ability to smoke adds nothing to plaintiff's equal protection claim.

### 3. *Other allegations*

Plaintiffs' allegations suggest that they believe they are entitled to decide for themselves whether they will stop smoking because the ban is part of the treatment of ch. 980 patients. In addition, plaintiffs contend that the decision to smoke is a personal choice with which defendants may not interfere. Finally, their allegations can be read to suggest that Sand Ridge is not adequately staffed to deal with the consequences of depriving patients of the ability to smoke. None of these concerns implicates a federal interest. The ban is most likely not a part of any treatment program; instead, it is a measure designed to protect patients and staff from the risks associated with smoking and secondhand smoke. Although plaintiffs may believe that they have the right to choose to smoke, that right is not protected by any federal law or by the Constitution. Defendants' motion to dismiss will be granted with respect to plaintiffs' claims that the smoking ban violates their rights under the due process and equal protection clauses.

### B. *Conditions of Confinement*

■ Unlike criminally confined offenders, who may be subject to punishment as long as it is not cruel and unusual under the Eighth Amendment, persons civilly confined (including those confined under ch. 980) may not be punished. *Youngberg v. Romeo*, 457 U.S. 307, 320, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982). Punishment of civilly confined patients violates their substantive due process rights under the Fourteenth Amendment. *Id.* However, ch. 980 patients "may be subjected to conditions that advance goals such as preventing escape and assuring the safety of others." *Allison v. Snyder*, 332 F.3d 1076, 1079 (7th Cir.2003).

■ In examining whether conditions of civil confinement are punitive, "courts must show deference to the judgment ex-

ercised by the qualified professional." *Youngberg*, 457 U.S. at 321, 102 S.Ct. 2452. Professional decision makers include persons "competent, whether by education, training, or experience, to make the particular decision at issue." *Id.* at 323 n. 30, 102 S.Ct. 2452. Decisions made by such professionals are "presumptively valid." *Id.* at 323; *see also Barichello v. McDonald*, 98 F.3d 948 (7th Cir.1996); *Estate of Cole v. Fromm*, 94 F.3d 254 (7th Cir. 1996) (applying same standard to pretrial detainee committed to psychiatric ward).

■ Nothing in plaintiffs' allegations suggests that the conditions of their confinement are punitive. Plaintiffs' allegations that units on wings A and B have security doors, that Sand Ridge was designed and built as a prison and that it is the only mental health facility in the United States surrounded by a high voltage fence do not state a conditions of confinement claim. As noted above, civilly committed individuals may be detained in conditions designed to prevent their escape and maintain security. In *Allison*, 332 F.3d at 1079, the court of appeals upheld the practice of confining sexually dangerous persons in the same facility as convicted criminals. Therefore, plaintiffs' allegations are insufficient to state a claim that the conditions of their confinement violate due process.

### C. *Treatment*

■ In determining whether the state has met its obligation to provide constitutionally adequate treatment, "decisions made by the appropriate professional are entitled to a presumption of correctness." *Youngberg*, 457 U.S. at 324, 102 S.Ct. 2452. This deferential standard indicates that states retain great flexibility in designing and implementing treatment programs. *Kansas v. Hendricks*, 521 U.S. 346, 368, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997). In

addition, it reflects the judgment that courts are ill-equipped to make decisions regarding the treatment of the mentally ill and should show deference to treatment decisions made by qualified professionals. *Youngberg*, 457 U.S. at 322, 102 S.Ct. 2452. In light of these considerations, due process requires only that treatment decisions be the product of professional judgment. *West v. Schwebke*, 333 F.3d 745, 748 (7th Cir.2003). The mere fact that a patient would prefer another course of treatment does not suggest that the treatment he is receiving is constitutionally inadequate. *Allison*, 332 F.3d at 1079–81. Plaintiffs must allege that their treatment "is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* at 323, 102 S.Ct. 2452.

Defendants argue that plaintiffs' allegations regarding their treatment fail to satisfy the notice pleading standards of Fed. R.Civ.P. 8. In their complaints, plaintiffs describe the staffing levels and treatment programs at Sand Ridge in general terms. They allege that psychiatric care technicians, who have the closest contact with patients, need not have training or experience in interacting with patients. They allege that psychiatric care supervisors are not required to have any clinical education. They allege that Sand Ridge employs only one psychiatrist and less than five psychologists. They describe two treatment programs, the Corrective Thinking Program and the Conventional Program, as well as the procedures patients must follow to schedule an appointment with clinical or medical personnel. Finally, they allege that life at Sand Ridge can be highly stressful at times.

■ From these allegations, it is reasonably clear that plaintiffs are challenging the treatment they are receiving. Defen-

dants are correct, however, that these allegations fail to state a claim. First, plaintiffs have not alleged that the treatment programs or staffing levels have injured them in any way. The only injury they allege is that they have been deprived of the ability to decide whether to smoke. Therefore, their inadequate treatment claim could be dismissed for lack of standing. Even if plaintiffs had alleged an injury resulting from their treatment, I would dismiss this claim because their allegations are not serious enough to state a claim of constitutional proportion. In a recent case involving a ch. 980 patient living at Sand Ridge, I concluded on the basis of an extensive factual record that treatment decisions were made by qualified professionals. *Williams v. Nelson*, 398 F.Supp.2d 977, 987–88 (W.D.Wis.2005). Moreover, I concluded that the patient's right to adequate treatment was not violated even though patient care technicians have the most contact with patients and participate in day-to-day decisionmaking. *Id.* at 988–89. In another recent case, I concluded that a patient's allegation that he was forced to submit to a polygraph exam as part of his treatment failed to state a due process claim. *Laxton v. Watters*, 348 F.Supp.2d 1024, 1029–30 (W.D.Wis.2004). Plaintiffs have a constitutional right to the exercise of professional judgment with respect to their treatment. Nothing in their allegations suggests that professional judgment is not being exercised at Sand Ridge. Therefore, I will grant defendants' motion to dismiss this claim.

### D. *State Law Claims*

■ A district court may decline to exercise supplemental jurisdiction over a claim when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The general rule is that when all federal claims are dismissed prior to trial, the district

court should decline to exercise supplemental jurisdiction over remaining state law claims. *Carr v. CIGNA Securities, Inc.*, 95 F.3d 544, 546 (7th Cir.1996). Because I am granting defendants' motion to dismiss with respect to each of plaintiffs' federal claims, no claims remain within this court's original jurisdiction. Therefore, I will decline to exercise supplemental jurisdiction over plaintiffs' state law claims.

When a court declines to exercise supplemental jurisdiction over state law claims in a case that has been removed from state court, the court has two options: the claims may either be dismissed without prejudice or the case may be remanded under 28 U.S.C. § 1447(c) to the state court from which it was removed. *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 351, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); *Teta v. Packard,* 959 F.Supp. 469, 477 (N.D.Ill.1997). In *Carnegie–Mellon,* 484 U.S. at 353, 108 S.Ct. 614, the Court stated that remanding a case in which all federal claims have been dismissed may better serve the interests of economy, convenience and fairness. *Id.* at 353, 108 S.Ct. 614. I believe that remanding these cases is the appropriate course of action. Nothing would be gained by dismissing plaintiffs' state law claims and forcing them to refile in state court. Therefore, I will grant plaintiffs' motion to remand.

### ORDER

IT IS ORDERED that

1. Defendants' motion to dismiss is GRANTED with respect to plaintiffs' claims that

    a. The smoking ban at the Sand Ridge Secure Treatment Center violates their rights under the equal protection and due process clauses of the Fourteenth Amendment;

    b. The conditions of plaintiffs' confinement at Sand Ridge violate their rights under due process clause of the Fourteenth Amendment; and

    c. The treatment plaintiffs receive at Sand Ridge violates their rights under the due process clause of the Fourteenth Amendment.

2. Plaintiffs' motion to remand is GRANTED and these cases are REMANDED to the Circuit Court for Dane County, Wisconsin for proceedings with respect to plaintiffs' state law claims.

3. The clerk of court is directed to return the records in case nos. 05–C–715–C and 05–C–716–C to the Circuit Court for Dane County, Wisconsin.