Fremont-Smith, J.
The plaintiff, Kevin Grayhawk LeMay (“LeMay”), brings this action against the defen *439 dants, Lany E. DuBois, as Commissioner of the Massachusetts Department of Correction (“DuBois"), and Paul D. Murphy, as Superintendent of the Old Colony Correctional Center (“Murphy”), alleging that the smoking policies of the Department of Correction (“the DOC”) and Old Colony Correctional Center (“OCCC”)[3] which prohibit and or restrict tobacco product use: (1) are improperly promulgated; (2) are inconsistent with the vested property rights of prisoners; (3) are arbitraiy and capricious; (4) violate free trade; and (5) amount to intentional infliction of emotional distress. The plaintiffs also maintain that the DOC breached a 1996 settlement agreement by not providing the prisoners with smoking cessation programs. The plaintiffs seek a preliminary injunction allowing inmates to: (1) smoke outdoors; and (2) purchase tobacco products and lighters at inmate canteens. The defendants oppose the plaintiffs’ request for injunctive relief, and move to dismiss the action or, in the alternative, for summary judgment. The plaintiffs have also moved for summary judgment. After hearing and the Court’s consideration of the submissions of the parties, the defendants’ motion for summary judgment is ALLOWED and the plaintiffs’ motion for summary judgment is DENIED, except as noted below with respect to the actions brought by two of the inmates, Lisasuain and Trefal.
BACKGROUND
In January 1994, a nonsmoking prison inmate brought suit alleging continued exposure to secondary tobacco smoke and seeking a preliminary injunction to ban smoking. The inmate’s motion was heard by the Court (Houston, J.) and air quality testing was ordered. Since July 1994, two different air quality experts have tested the air at sixteen DOC facilities, making two visits to OCCC. In March 1995, the Court (Houston, J.) certified a class consisting of “all nonsmoking individuals who are now, or may be in the future, inmates committed to the custody of the Massachusetts Department of Correction.” On or about July 18, 1996, after evaluating the final reports of the air quality experts, the parties entered into a settlement agreement which was approved by the Court (Houston, J.). See Jordan v. DuBois, Civil No. 94-0304-G (Suffolk Super. Ct. July 26, 1994).
Following the settlement agreement, DuBois introduced a new inmate smoking policy, 103 C.M.R. 444, effective September 2, 1996.[4] On or about September 3, 1996, defendant Murphy adopted 103 C.M.R. 444 as the institutional policy at OCCC. Although an American Lung Association smoking cessation program was made available to OCCC inmates, the Court notes that at the time the program was first offered, on August 8, 1996, it is not clear whether the inmates were aware that inmate smoking would be eliminated at OCCC.[5] On September 23, 1996, Murphy sent a memo to all inmates advising them that: (1) tobacco products and lighters would no longer be available for purchase in the prison canteen; and (2) as of November 3, 1996, all tobacco products and lighters would be considered contraband at OCCC. The plaintiffs now seek a declaration and injunction as noted above. A consolidated hearing was held on August 12, 1997.
DISCUSSION
This Court should grant summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Nashua Corp. v. First State Ins. Co., 420 Mass. 196, 202 (1995); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving parly to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party is unlikely to submit proof of that element at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “The nonmoving party cannot defeat the motion for summary judgment by resting on its pleadings and move assertions of disputed facts ...” LaLonde v. Eissner, 405 Mass. 207, 209 (1989). The nonmoving party’s failure to prove an essential element of its case “renders all other facts immaterial” and mandates summary judgment in favor of the moving party. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). Vague and general allegations of expected proof are not enough to defeat a summary judgment motion. Cherella v. Phoenix Technologies, Ltd., 32 Mass.App.Ct. 919, 920 (1992).
The plaintiffs first allege that the DOC regulation, 103 C.M.R. 444, was improperly promulgated and as such, violates their constitutional rights to be free from cruel and unusual punishment as proscribed by the Eighth Amendment. “At the outset, it must be emphasized that there is ‘no constitutional right to smoke in a jail or prison.’ ” Doughty v. Weld Colorado Bd. of County Commissioners, 731 F.Supp. 423, 426 (D.Colo. 1989). “In order to establish cruel and unusual punishment under the Eighth Amendment, plaintiffs must prove that the ban on tobacco use was implemented with an intent to punish and' is not reasonably related to a legitimate government objective.” Reynolds v. Bucks, 833 F.Supp. 518, 520 (E.D. Pa. 1993) [quoting Bell v. Wolfish, 441 U.S. 520, 538-39 (1979). “Additionally, plaintiffs must show that the ban ‘violates the evolving standards of decency that mark the progress of a maturing society’ or that the ban involves the ‘unnecessary and wanton infliction of *440 pain.’ ” Id. (quoting Estelle v. Gamble, 429 U.S. 97, 102-03 (1976). Here, where the prison prohibition and/or restriction on the use and purchase of tobacco products was instituted following and as a result of the settlement agreement, the plaintiffs have not proven that the regulation was promulgated to punish rather than to further a legitimate government objective.
The plaintiffs next contend that their suffering pursuant to nicotine withdrawal constitutes the “unnecessary and wanton infliction of pain,” particularly when they are continually transferred between prisons which ban smoking and prisons which allow smoking, thereby suffering repeated withdrawal.
The Court acknowledges that smokers required to quit “cold turkey” may, in certain instances, suffer serious withdrawal symptoms, discomfort, and even pain.[6] The DOC represented at oral arguments, however, that prisoners suffering physically or psychologically from nicotine withdrawal could request to be placed on sick call and would receive appropriate treatment. Certainly, failure of the DOC to provide appropriate medical treatment on request where serious medical or psychological symptoms are demonstrated might, in appropriate circumstances, rise to the level of a constitutional violation. See Helling v. McKinney, 113 S.Ct. 2475, 2480 (1993) (“ ‘deliberate indifference to serious medical needs of prisoners’ violates the [Eighth] Amendment because it constitutes the unnecessary and wanton infliction of pain contrary to contemporary standards of decency.”); Jackson v. Comm. of Corrections, 39 Mass.App.Ct. 566, 568 (1995) (a non-smoking inmate who is housed with a smoker in the same cell resulting in medically-attested physical symptoms need not wait until he suffers actual harm before he can assert a constitutional cause of action). In many if not most cases, however, their suffering may be “only slightly different from the mental and physical disruption that other prisoners suffer from the loss of their eating, exercise, sex, drinking and sleeping patterns when they are free. Like nicotine withdrawal, these reactions will be uncomfortable, but they are not hazards to health.” Washington v. Tinsley, 809 F.Supp. 504, 507-09 (S.D. Tex. 1992).
To be cruel and unusual punishment, the conditions must violate society’s evolving standards of decency or constitute a wanton infliction of pain. Given the known health risks associated with smoking and the fact that more and more office buildings, stores, restaurants, and public accommodations prohibit smoking, it cannot be said that a smoking ban conflicts with society’s standards of decency.
Reynolds, supra, at 520. Moreover, where, as here, “(t]he fact that the prison draws a distinction between employees, who are allowed to smoke in designated areas and prisoners who are not, does not suggest that the intent of the prison is indeed punishment... It is beyond question that there are numerous legitimate reasons to distinguish between the treatment of employees and prisoners.” Id. Accordingly, the Court concludes that, absent a showing of deliberate indifference to serious medical needs, which is generally lacking here, the regulations do not violate the constitution.[7]
The plaintiffs further assert that 103 C.M.R. 444 was improperly promulgated in that, in some correctional facilities, they have been denied the right to smoke outside as specifically permitted by the regulation. The regulation does not, however, confer any substantive rights upon inmates. It merely provides that “inmates may be permitted to smoke outdoors and to possess tobacco products.” 103 C.M.R. 444.02(2) (emphasis added). The Supreme Court has held, moreover, that “[p]rison regulations are not designed to confer rights upon inmates.” Sandin v. Conner, 115 S.Ct. 2293, 2299 (1995). “Prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.” Bell v. Wolfish, 441 U.S. 520, 547 (1979).
The plaintiffs similarly assert that 103 C.M.R. 444, which prohibits and/or restricts inmate use and possession of tobacco products, is inconsistent with their vested property rights as established by 103 C.M.R. 403. That regulation, however, specifically states that its provisions “are not intended to confer any procedural or substantive rights or any private cause of action not otherwise granted by state or federal law.” 103 C.M.R. 403.01. Moreover, the Supreme Judicial Court has held that in order
[t]o have a property interest in a benefit, a person must clearly have more than an abstract need or desire for it... He must, instead, have a legitimate claim of entitlement to it . . . Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law — rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.
Smith v. Commissioner of Mental Retardation, 409 Mass. 545, 549 (1991) (quoting Regents of State Colleges v. Roth, 408 U.S. 564, 576-77 (1972)). It is well established, moreover, that “[g]overnment action does not constitute a ‘taking’ if the plaintiff does not have a property right in the affected property.” German v. Commonwealth, 410 Mass. 445, 450 (1991). Here, plaintiffs have no vested property right in cigarettes or smoking.
The plaintiffs also contend, citing M.G.L.c. 270, §22, that they should be permitted to smoke outside or in designated smoking areas within the public areas of the prisons. Section 22 provides, in pertinent part, “. . . No person shall smoke ... in any public building, except in an area which has specifically been designated as the smoking area ...” The legislature explicitly provided, however, that “[n]othing in the act shall *441 be construed to permit smoking in any area in which smoking is or may hereafter be prohibited by law ...” St. 1987, c. 759, §5 (approved January 14, 1988).
The plaintiffs also assert that the DOC violated the settlement agreement in Jordan, supra, by not providing smoking cessation programs. The agreement stated:
At DOC facilities in which the smoking of tobacco products has not previously been prohibited in all enclosed living areas within the facility, the DOC has contracted with the American Lung Association to provide training to staff as smoking cessation facilitators. These trained facilitators will conduct the American Lung Association’s “Freedom from Smoking” program for inmates. In addition to the eight week smoking cessation program, the DOC shall make available to inmates smoking cessation educational materials and consider making available smoking cessation aids.
The DOC has complied with the settlement agreement in that it held two separate smoking cessation programs for the prisoners in September and November of 1996.
The plaintiffs also claim that the defendants’ actions violate the commerce clause of the United States Constitution because they interfere with competition and free trade. The commerce clause is violated when a statute or regulation discriminates against out-of-state goods or services, see Maine v. Taylor, 477 U.S. 131, 138 (1986), or imposes a burden on interstate commerce that is greater than the local benefit the statute or regulation provides. See National Kerosene Heater Association, Inc. v. Commonwealth of Massachusetts, 653 F.Supp. 1079, 1095 (D.Mass. 1986). However, “courts will uphold state police power even where a state cannot empirically demonstrate that the law will be beneficial.” Id. at fn.6. Based on the facts presented, the plaintiffs have alleged nothing to show that the smoking regulations discriminate against goods or services originating from outside of Massachusetts or that they burden interstate commerce to a greater degree than the benefit provided to the local community.
Finally, the plaintiffs’ assert that the smoking regulations have resulted in intentional infliction of emotional distress. In order to sustain a claim for intentional infliction of emotional distress, the plaintiffs must show “(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct... (2) that the conduct was ’’extreme and outrageous," was “beyond all possible bounds of decency” and was “utterly intolerable in a civilized community,” ... (3) that the actions of the defendant were the cause of the plaintiffs distress . . . and (4) that the emotional distress sustained by the plaintiff was “severe” and of a nature “that no reasonable man could be expected to endure it.” Agis v. Howard Johnson Co., 371 Mass. 140, 144-45 (1976). The plaintiffs have failed present any evidence demonstrating that the smoking regulations are “extreme and outrageous” and “beyond all possible bounds of decency,” or that the plaintiffs’ nicotine withdrawal is “of a nature that no reasonable man could be expected to endure it.”
ORDER
For the foregoing reasons, the defendants’ Motions for Summary Judgment are ALLOWED and the plaintiffs’ Motion for Summary Judgment are DENIED, and judgment shall enter for the defendants in all cases except those of Trefal and Lisasuain.
In addition to contesting the validity of the smoking regulations, inmate Lisasuain alleges that the DOC, in transferring him to a county prison, has deprived him of his clothing and property in violation of 103 CMR 403. The Court has issued a separate procedural order today with respect to the remaining issues in that case, (No. 96-4623-G), as well as that of Trefal (No. 96-7132-B) (see footnote no. 7, supra).

 Although the inmates are housed in various facilities throughout the commonwealth, the DOC regulations apply to all correctional facilities and thus the rulings in this opinion are applicable to all inmates housed in DOC facilities within the commonwealth.

 The new inmate smoking regulation provides, in pertinent part:

444.02 Inmate Smoking

1. Inmates shall not be permitted to smoke in the following areas:
A. All enclosed living areas within the facility, including rooms, dining halls, classrooms, training rooms, vocation areas, recreational areas, storage areas, libraries and lavoratories;
B. Medical or Health Services Areas;
C. State vehicles in which any occupant is a nonsmoker.
2. Inmates may be permitted to smoke outdoors and in designated smoking areas, approved by the Commissioner, provided that, through the use of appropriate *442 ventilation or segregation of smokers from nonsmokers, or a combination of the two, nonsmokers are not exposed to environmental tobacco smoke outside of designated smoking areas.
3. The DOC shall not permit smoking in any area with a television, pool table, exercise equipment, books or any other recreational items without making available, for the use of nonsmokers, comparable recreational items in an environment free from environmental tobacco smoke.

 A second smoking cessation program was offered to OCCC inmates in November of 1996, at which time all inmates were aware of the new inmate smoking policies.

 The wisdom of depriving smoking inmates of all cigarettes even for use only in designated outdoor areas and declaring them to be contraband may be questioned, but this is a matter of prison policy with which the Court will not interfere absent a showing of violation of inmates’ legal rights.

 At the hearing, inmate John Trefal argued that he had been driven to cause himself self-inflicted wounds due to nicotine withdrawal without being provided any medical aids. As this could constitute a constitutional violation if proven, his action is not dismissed.